33 N.J. Super. 285 (1954)
110 A.2d 61
STANLEY CRUICKSHANKS, GORDON CRUICKSHANKS, WILLIAM CRUICKSHANKS AND REID CRUICKSHANKS, PLAINTIFFS,
v.
THOMAS EAK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 7, 1954.
*286 Mr. John P. Kozak, attorney for the plaintiffs.
Mr. Jacob H. Bernstein, attorney for the defendant.
KALTEISSEN, J.C.C. (temporarily assigned).
The complaint filed by the plaintiffs against the defendant in this case contains two counts. Count one alleges that certain premises owned by the plaintiffs were let on a month-to-month basis to the defendant pursuant to an oral lease and that the defendant, during the term of the lease, damaged the leased building in various ways. The plaintiffs demand *287 $5,000 to reimburse them for this alleged damage by the defendant.
Count two of the complaint reiterates the fact of the oral month-to-month tenancy stated above and charges the defendant with having committed waste upon the premises, presumably in violation of N.J.S. 2A:65-2. For the commission of this waste the plaintiffs demand treble damages in the aggregate sum of $15,000 and rely on N.J.S. 2A:65-3 for the demand of such treble damages.
The defendant has moved to strike Count Two and sets forth two grounds for his motion:
"(a) a month to month tenant does not come within the intended scope of the statute cited in paragraph three of said count, and
(b) the alleged claim set forth therein is barred by the applicable statute of limitations, namely N.J.S. 2A:14-10."
Oral arguments were heard by me on November 12, 1954, and at the conclusion thereof I informed counsel that I would take the issues under advisement pending a study of their memoranda.
The first issue with which I will deal pertains to the defendant's contention, as stated in his memoranda, that a month to month tenant does not come within the scope of N.J.S. 2A:65-3. In this particular connection it should be noted that at the time this cause of action arose Title 2 of our statutes had not yet been revised into its present form, 2A. Accordingly the parties' substantive rights in this case must depend upon R.S. 2:79-2 and 2:79-3, predecessors of N.J.S. 2A:65-2 and 2A:65-3.
R.S. 2:79-2 provided that "No tenant for life or years, or for any other term, shall, during the term, make or suffer any waste, sale or destruction * * *." (Italics mine.) R.S. 2:79-3 states that "Any person may have a writ of waste out of chancery against any person holding by dower, curtesy, or otherwise, for life, for a term of years, or other term * * *; and whoever shall be convicted of waste shall lose the thing or place wasted, and shall be liable in thrice the damages assessed against him by a jury." (Italics mine.) *288 These two statutes have their immediate origin in Cumulative Supplement, p. 5790, sections 2 and 3, respectively.
The defendant takes the position that R.S. 2:79-3 does not permit the recovery of treble damages from a month-to-month tenant and cites Smith v. Salvation Army, 104 N.J.L. 102, 140 A. 298 (E. & A. 1928), as authority for that contention. I take the view that the Smith case does not stand for that precise proposition. Further, it is my opinion that the decision has no present determinative value to the particular issue under discussion and I shall state the reasons for this conclusion later in this opinion. However, since the point involved troubled me considerably, I found it necessary to examine the matter with considerable research and care.
The Smith case involved a cause of action which, in substance, was similar to the case before me and was initiated in a law court. (The emphasis is important, as will be made clear shortly.) Treble damages were added to by the court to the jury's verdict. Upon appeal the Court of Errors and Appeals reversed the judgment insofar as it awarded treble damages and modified it so as to confer single damages only. Justice Black, writing the opinion for the court, reviewed the history of the pertinent statute on waste in force at that time. (C.S., p. 5790, secs. 2 and 3, the immediate forerunners of R.S. 2:79-2 and 2:79-3. The two sets of statutes, incidentally, read almost precisely the same.) He observed that section 2 had its origin in the English Statute of Marlbridge, which "was passed expressly to provide a remedy against tenants committing or suffering waste. Such a remedy did not exist at common law. * * *" (140 A. at page 299,  Italics mine.)
Justice Black continued:
"* * * Then section 3 was passed, which is known as the Stat. of Gloucester, 6 Edw. 1, 5. This statute extended the action of waste, so as to include tenants for a term of years, tenants in dower, by the curtesy, for life or less, or for a term of years. It provided for a writ of waste out of chancery against the tenant so *289 designated. The punishment, however, was increased by this statute. It provided that the place of thing wasted should be recovered, together with treble damages. * * *" (140 A. at page 299  Italics mine.)
The opinion thereafter concluded that treble damages were not proper in the particular case before it and it is obvious that the court reached this conclusion only because of the distinction which it discerned between the Statutes of Marlbridge and Gloucester. The former, said the court, contemplated an action at law, whereas the second prescribed that an action be initiated by writ of waste out of Chancery. Since the former made no mention of treble damages, while the latter did, the court evidently reasoned that two different actions were contemplated and that the amounts of damages contemplated by each were mutually exclusive. Thus, if any action for waste were not commenced by such a writ of waste out of Chancery, but rather by an action on the case, single damages only could be had; which, of course, happened to the exact case before the court.
I think that Justice Black's opinion itself provides ample support for this interpretation of the sense of the decision. I have particular reference to his observation that "* * * If the Legislature had intended to make the tenant liable for treble damages, it would have, no doubt, expressly so provided, as in section 3. * * *" (140 A. at page 299  Italics mine.) Elsewhere in the opinion, 140 A. at pages 299, 300, the justice concedes that, despite the limitation on damages which the court said was contained in the Statute of Marlbridge, treble damages could be obtained if an action were commenced pursuant to the Statute of Gloucester:
"None of the other sections of the statute, providing for treble damages, are applicable to the facts of the case here under discussion. These treble damage sections are highly penal or punitive in character. * * * (The) third section, i.e., the Gloucester statute, in an appropriate proceeding, as there provided, by a writ of waste out of chancery against him or her, who holdeth for a term of years, or other term, being convicted of waste, shall lose the thing or place wasted, and be recompensated thrice as much as *290 the damages, to be assessed at by the jury, could be construed, so as to include the relation of landlord and tenant, * * *." (Italics mine.)
In other words, the form and forum in which the action was initiated determined whether or not treble damages could be had: if the action were the ordinary one, on the case, single damages only; if, on the other hand, the action were commenced by writ of waste out of Chancery, treble damages were permissible. In this connection I am mindful of the defendant's objection to this distinction, set forth on page 2 of his reply memorandum, that despite the provision for a writ of waste out of Chancery, "the action was prosecuted in a LAW court." (Capitals by the defendant.) Assuming this to be so, I am nevertheless constrained to emphasize that the first act by a plaintiff had to be performed in Chancery. What followed thereafter would be immaterial, the important point being that the distinction pronounced by the Court of Errors and Appeals in the Smith case would have been observed.
It being established that treble damages could be recovered by an appropriate proceeding as far back as the time of the Statute of Gloucester, my conclusion as to the particular case before me must be quite clear. As I noted at the beginning of this opinion the Smith case is actually not determinative of this cause since the provision as to a writ of waste out of Chancery goes only to the adjective rights of the plaintiffs and I need hardly emphasize that all actions today are "at law." Thus, while N.J.S. 2A:65-2 and 2A:65-3 do not control the adjudication of the plaintiffs' substantive rights they do prescribe the form and forum in which they must pursue those rights.
N.J.S. 2A:65-3 states that
"A civil action may be maintained in the superior court against the tenant, and upon a finding that waste has been committed, treble damages shall be assessed or granted, and the defendant shall lose the thing or place wasted."
*291 There is no suggestion that the plaintiffs have in any way failed to comply with the simple requirement of the statute and I find none.
The defendant's motion to dismiss the second count, on the ground that treble damages are not permitted, is denied.
The defendant's second ground for dismissal of the complaint is that the action is outlawed by N.J.S. 2A:14-10. Examining that statute I note that it applies to very particular circumstances, pertaining only to "actions at law brought for any forfeiture upon any penal statute." (Italics mine.) The only question is whether R.S. 2:79-3 is a "penal statute" in the sense in which that phrase is used in N.J.S. 2A:14-10.
I have carefully examined the authorities on this point, including those cited by both parties in their memoranda. As a result I must conclude that R.S. 2:79-3 is a completely remedial statute and not at all "penal" in nature in the sense that that term is used in N.J.S. 2A:14-10. The leading New Jersey case on the subject seems to be Ryan v. Motor Credit Co., 130 N.J. Eq. 531, 23 A.2d 607 (Ch. 1941), affirmed 132 N.J. Eq. 398, 28 A.2d 181 (E. & A. 1942), and I think that it unqualifiedly supports the plaintiffs' contention that R.S. 2:79-3 or its successor, N.J.S. 2A:65-3, are not subject to the limitations prescribed by N.J.S. 2A:14-10.
The Ryan case involved a statute regulating small loans. Among other things it prohibited certain acts by the lender, stamping those acts as misdemeanors and, at the same time, permitting the borrowers to recover certain sums in the event any such misdemeanor was conmitted. The plaintiff filed suit against the defendant, alleging certain violations of the act and seeking recovery of certain sums of money. The defendant pleaded the special statute of limitations, stating that the act giving the right of recovery was penal and therefore outlawed as not having been commenced within the two years prescribed by the special statute of limitations. The plaintiff argued that the act was remedial only and therefore not subject to the provisions of the special statute. Vice-Chancellor *292 Berry, in an opinion subsequently affirmed by the Court of Errors and Appeals, rejected the plaintiff's argument, holding that the act in question was partly remedial and partly penal, thus bringing it within the terms of the special statute. In so doing he quoted the Court of Errors and Appeals, which had previously drawn the distinction between purely remedial and penal laws, in People of State of New York v. Coe Manufacturing Co., 112 N.J.L. 536, 172 A. 198 (1934):
"Penal laws, strictly speaking, are those imposing punishment for an offense against the state, and the test whether a law is penal is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual."
Thus, if the wrong sought to be redressed is a wrong to the public the statute is penal, and if it is a wrong to the individual the statute is remedial. However, I take it to be the sense of Vice-Chancellor Berry's opinion that if an act is part one and part the other it cannot escape the provisions of the special statute of limitations. It is by these standards that we must interpret the statute under consideration.
Did R.S. 2:79-3 make the commission of waste punishable by the State in any manner? There is not the remotest suggestion that the State had, then or now, any direct interest in the matter. Rather, the Legislature had provided the owners of real estate exclusively with a remedy for the commission of waste by certain temporary occupants or possessors. The damages available are limited to recovery by the owner alone and no one else. Thus, it is clear that the Legislature entertained no idea that it was providing the means for redressing a public wrong.
I note that the defendant, in alluding to the Ryan case on page 5 of his reply memorandum, quotes Vice-Chancellor Berry as having said (23 A.2d at page 613) that penal laws "are also commonly used as including an extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered." Examination of the opinion, however, makes it clear that the *293 quoted words form part of a direct quotation by the vice-chancellor from 21 R.C.L. 206, the subject there dealt with being "penalties"; and the full text as quoted by Vice-Chancellor Berry being as follows:
"The words `penal' and `penalty' * * * strictly and primarily * * * denote punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws. But they are also commonly used as including an extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered."
I think that the latter part of this quotation is offered in an explanatory way only and that Vice-Chancellor Berry similarly intended his use of it to be read that way, as in context with that which preceded it. To my mind, the use of the word "commonly" is the key, denoting that there is a distinction between popular usage and acceptance on the one hand and the technical, judicial use and acceptance on the other. I do not deny that sometimes the popular usage is even found in expressions of opinion by our highest courts, a specific example being the Smith case, supra, where it will be seen, in a partial quote from the opinion in that case, that Justice Black had said "These treble damage sections are highly penal or punitive in character." (Italics mine.) However, there is no doubt in my mind that Justice Black was there resorting to popular usage.
The defendant's motion to dismiss the second count, based on the second ground advanced by him, is denied.