214 N.J. Super. 140 (1986)
518 A.2d 743
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF-RESPONDENT,
v.
HENRY HARRIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1986.
Decided July 9, 1986.
Before Judges MICHELS, DEIGHAN and STERN.
Frederic J. Gross argued the cause for appellant.
*141 Ronald P. Heksch, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Ronald P. Heksch, on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Defendant Henry Harris appeals from an order of the Chancery Division assessing a $22,900 penalty upon him, pursuant to N.J.S.A. 13:1E-9. This penalty, payable to plaintiff State of New Jersey, Department of Environmental Protection (DEP), was imposed as a result of defendant's failure to comply with a prior administrative order which directed that he properly close the sanitary landfill which he owned and operated.
The facts giving rise to this appeal are not in dispute and may be briefly summarized as follows. Commencing in 1947, defendant began operating a small sanitary landfill in Harrison Township, Gloucester County. Over the years, this landfill was known as both the "Henry Harris Landfill" and the "Harrison Township Sanitary Landfill." In 1970, our Legislature enacted the "Solid Waste Management Act," N.J.S.A. 13:1E-1 et seq., and created the DEP which it vested with jurisdiction over the regulation of sanitary landfills. Accordingly, on June 1, 1970 defendant, as owner and operator of the "Henry Harris Landfill" (landfill), filed an application to obtain a license to enable him to continue to conduct a refuse disposal operation on his property. Such a license was issued by the DEP on June 23, 1970. This license was issued, in the absence of the "engineering design" plan required by N.J.S.A. 13:1E-5, upon defendant's assurance that an operational plan would be supplied in the future.
In 1973, defendant submitted a "plat of topography" to the DEP, dated February 1, 1973. This plat designated property lines and contours of the landfill, as they existed at the time the plan was prepared. The plat further depicted the landfill's *142 proposed final contours and its existing and final slopes. A contour line thereon indicated a "landfill limit" of 140 feet. This "plat of topography" was ultimately approved by the DEP.
Defendant continued to operate his landfill and by petition dated August 11, 1978, he requested that the Board of Public Utilities (BPU) accord him a rate increase, pursuant to N.J.S.A. 48:2-21 et seq. In this petition, defendant asked that his rate: (1) for compounded refuse be increased from $0.50 to $1.30 per cubic yard; (2) for bulky and non-compressible materials from $0.60 to $2.00 per cubic yard; and (3) for acceptable liquid waste from $0.02 to $0.04 per gallon. On June 13, 1979, a stipulation was entered into by all parties which enabled defendant to increase his rate to $1.10 per cubic yard for compounded refuse, while maintaining his petition's requests for bulky and non-compressible materials and acceptable liquid waste. The stipulation was memorialized in a BPU decision and order dated June 27, 1979. This order specifically noted that this rate increase would allow defendant to cut his annual operating losses from $528,037 to $58,643 which, when coupled with the prospect of new business, would allow defendant to "break-even."
However, as of 1979, when the stipulated BPU decision and order were being finalized, defendant's facility had been filled to elevations exceeding those shown on the topographical plat approved in 1973. Accordingly, on April 23, 1979, the DEP issued an administrative closure order which directed defendant to: (1) cease acceptance of solid waste at his landfill within six months; and (2) implement designated closure procedures. Defendant appealed this order, seeking an administrative hearing, and a stay of the closure order. In August 1980 an administrative law judge determined that the 1973 "plat of topography," which had been approved by the DEP, constituted the landfill's required engineering design, pursuant to N.J.S.A. 13:1E-5. The administrative law judge further found that defendant had already filled his landfill beyond the elevational limits set forth on the plan. Accordingly, the judge recommended that defendant *143 be directed to comply with the DEP's closure order of April 23, 1979.
These recommendations of the Office of Administrative Law were adopted by the Commissioner of the DEP, who ordered defendant to close his landfill effective January 1, 1981. Defendant appealed this final administrative action to the Appellate Division. At the conclusion of oral arguments, we orally affirmed the order of the Commissioner of the DEP and mandated that defendant's landfill be closed immediately. Our affirmance was set forth in an unpublished per curiam opinion where, in part, we pertinently noted:

Appellant finally argues that immediate closure will impose a financial burden on neighboring municipalities and result in the bankruptcy of appellant. That may be so but the clear mandate of the statute cannot be ignored. The fact that the landfill was operating at heights in excess of the maximum depicted on the approved plan was known for several years. All municipal users and the appellant have been aware since April of 1979 that closure was imminent. There has been ample time to prepare for any adverse financial impact which may follow closure. (Emphasis supplied).
Although, in accordance with our mandate, defendant ceased accepting waste at his landfill in or about February 1981, the facility was never properly "closed" pursuant to the requirements of the "Solid Waste Management Act," N.J.S.A. 13:1E-1 et seq. Specifically, defendant: (1) never properly covered and graded the landfill, in order to provide for effective surface water runoff and drainage; (2) never seeded or otherwise stabilized the landfill facility to prevent soil erosion, (3) made no effort to initiate leachate collection or treatment at the facility; (4) never received a New Jersey Pollution Discharge Elimination System Permit; and (5) made no provision at the landfill site for methane gas venting and evacuation. In addition, defendant never implemented an approved closure plan for the landfill facility.
Inspections conducted by the DEP after 1981 detected numerous additional operational violations at the landfill including: (1) failure to spread and compact waste disposed of at the facility, as required by N.J.A.C. 7:26-2.5(b), (m); (2) failure to provide *144 adequate final cover on the landfill site, in violation of N.J.A.C. 7:26-2.5(p); (3) failure to properly maintain existing cover, in violation of N.J.A.C. 7:26-2.5(q); and (4) permitting water to pond on landfill, in violation of N.J.A.C. 7:26-2.5(e).
As a result of these concerns, on or about March 1, 1984 the DEP filed a complaint against defendant and Dorsey Harris with the Chancery Division in Gloucester County asserting that: (1) defendants were in violation of the "Sanitary Landfill Facility Closure and Contingency Fund Act," N.J.S.A. 13:1E-100 et seq., for their failure to bring about a proper closure of the "Henry Harris Landfill"; (2) defendants were in violation of the "Water Pollution Control Act," N.J.S.A. 58:10A-1 et seq., for discharging leachate without a permit, as required by N.J.S.A. 58:10A-6; and (3) defendants' failure to close their landfill, in accordance with the law, and their failure to cease the discharge of pollutants from the facility constituted a public nuisance which presented a direct, immediate and potential threat to the environment, public health safety and welfare. Dorsey Harris was never properly served and ultimately was dropped as a defendant. Moreover, defendant denied that Dorsey Harris was ever an owner or operator of the subject landfill.
In terms of relief, the State sought judgment: (1) holding defendant liable for proper closure of the landfill; (2) for any other action necessary to effectuate proper environmental closure of the facility; (3) requiring defendant to take all steps necessary to cease the discharge of pollutants from his landfill; (4) ordering defendant to pay statutory penalties and costs (including attorney's fees) incurred by the DEP in investigating and litigating the matter; and (5) requiring defendant to post a bond or alternate form of security to insure compliance with N.J.S.A. 13:1E-1 et seq. and N.J.S.A. 58:10A-1 et seq. and to insure proper abatement of the nuisance. Defendant filed an answer and counterclaim in which he asserted that the DEP should be estopped from seeking relief against him, and should *145 be ordered to pay all closure and post-closure maintenance costs at the landfill, due to its own wrongful actions.
As of April 1985, the DEP estimated that it would cost $2,000,000 to properly "close" defendant's landfill. Of this amount, approximately $1,500,000 would be needed for closure costs while $500,000 would be necessary to cover post-closure monitoring and maintenance. Defendant maintained that he did not have the financial resources necessary to undertake even a small portion of these $2,000,000 in costs. He alleged that this financial situation existed because the BPU never authorized him to charge his landfill customers rates which would have allowed him to pay for closing costs.
On cross-motions for summary judgment, the trial court first indicated that the doctrine of estoppel could not be raised against the DEP because it is an agency of the State, which is a sovereign. Moreover, the trial court found no action on the part of the DEP which was so unfair or unconscionable as to warrant the imposition of this doctrine. Upon a request by the DEP, that statutory penalties be assessed, the trial court indicated that it would not impose the maximum penalty of $25,000 a day, which was authorized by the "Solid Waste Management Act," for defendant's failure to properly close his landfill. Rather, the trial court assessed upon defendant a penalty of $100 per week, from February 9, 1981, the date of the affirmance of the order of the Commissioner of the DEP by this court, until June 26, 1985, which penalty was later calculated to total $22,900. This appeal followed.
Defendant now contends that the trial court erred in penalizing him $22,900, pursuant to N.J.S.A. 13:1E-9c, for his failure to comply with the administrative closure order of April 23, 1979. He asserts that the imposition of this penalty was erroneous, as a matter of law, since only willful disobedience may be penalized in a proceeding under R. 1:10-5. As a result of the trial court's comparison of the complaint filed by the DEP with a motion to enforce litigant's rights, defendant *146 alleges that the trial court was first bound to determine whether he had the ability to comply with the administrative order, before assessing a penalty for its violation. We disagree and are satisfied that the trial court did not err in imposing $22,900 as a penalty upon defendant pursuant to N.J.S.A. 13:1E-9c.
At the outset, we note that the injection into this proceeding of the reference to R. 1:10-5, dealing with relief to litigants, was incorrect since that rule was not applicable here. The DEP did not seek relief under R. 1:10-5 nor did the $22,900 penalty assessed by the trial court constitute relief pursuant to this rule. Rather, as the trial court's order itself stated, this penalty was imposed, "pursuant to N.J.S.A. 13:1E-9, for failure to comply with the administrative order of April 23, 1979."
The DEP complaint, among other relief, sought statutory penalties and the DEP asked the trial court to impose such penalties, pursuant to the "Solid Waste Management Act," N.J.S.A. 13:1E-1 et seq. The "Solid Waste Management Act" specifically provides for the imposition of penalties, as follows:

Any person who violates the provisions of this act or any code, rule or regulation promulgated pursuant to this act shall be liable to a penalty of not more than $25,000.00 per day, to be collected in a civil action commenced by a local board of health, a county health department, or the commissioner by a summary proceeding under "the penalty enforcement law" (N.J.S. 2A:58-1 et seq.) in the Superior Court or a municipal court, all of which shall have jurisdiction to enforce "the penalty enforcement law" in connection with this act. [N.J.S.A. 13:1E-9c (Emphasis supplied)].
"[T]he penalty enforcement law," to which N.J.S.A. 13:1E-9c refers, is found at N.J.S.A. 2A:58-1 et seq. This law provides that:
Any penalty imposed by any statute heretofore or hereafter enacted, which by direction or authority of such statute may be collected or enforced by summary proceedings or in a summary manner may be collected and enforced in summary proceedings pursuant to this chapter and the rules of the supreme court. [N.J.S.A. 2A:58-1].
Accordingly, this penalty enforcement statute "governs enforcement of penalties under all statutes." Department of Labor and Industry v. Rosen, 44 N.J. Super. 42, 48 (App.Div. 1957).
*147 There is no doubt that, at the time that this matter was before the trial court, defendant was in violation of N.J.S.A. 13:1E-1 et seq., by virtue of his failure to properly "close" his landfill, as required by N.J.A.C. 7:26-2.5(b), (e), (m), (p), (q). As the trial court noted:
I think it fairly implicit from the fact that both parties make motions for summary judgment that there are in reality no contested matters of fact.
Accordingly, since N.J.S.A. 13:1E-9c does not stipulate that either willfulness or intention to violate must be proved before a penalty is imposed and violation of the "Solid Waste Management Act" was not disputed, the trial court's imposition of a $22,900 penalty was entirely proper. Moreover, the matter did not have to be processed as a criminal or quasi-criminal proceeding. See Sawran v. Lennon, 19 N.J. 606, 615-616 (1955); Department of Conservation and Economic Development v. Scipio, 88 N.J. Super. 315, 321-322 (App.Div. 1965), certif. den., 46 N.J. 598 (1965).[1]
As this court recognized in Department of Labor and Industry v. Rosen, supra, 44 N.J. Super. at 50, "[t]he Legislature may make the commission or omission of an act penal regardless of intent...." Where this is the case, only a proscribed action or a failure to act need be shown. Ibid. Writing for the court in Rosen, Judge Freund reviewed the strict liability penalty provision of N.J.S.A. 34:11-6, observing:
It does not stipulate that willfulness or intention to violate must be proved. It does not say that the penalty need not be imposed if the offender establishes extenuating circumstances; as a matter of fact, it gives the court no discretion as to whether or not to impose the penalty. [It is] so plain and unambiguous that upon proof of violation, the court is not at liberty to infer or read into the statute that the Legislature intended that the penalty need not be imposed if the [S]tate fails to prove intention to violate or if the offender presented facts or circumstances denying willfulness or pleading financial inability. If the Legislature intended discretion in the enforcement of the statute, it would have so provided. [44 N.J. Super. at 49 (Emphasis supplied)].
*148 Certainly, these comments are equally applicable to the penalty provisions of N.J.S.A. 13:1E-9c, since both economic and social problems have compelled the Legislature's adoption of numerous "strict liability" penalty statutes. Department of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407, 411 (App.Div. 1970). Furthermore, particularly with respect to matters dealing with environmental and public resource concerns, our courts have recognized the State's right to obtain damages, by way of penalties imposed for injuries caused as a result of statutory violations. Lansco, Inc. v. Department of Environmental Protection, 138 N.J. Super. 275, 283 (Ch.Div. 1975), aff'd o.b., 145 N.J. Super. 433 (App.Div. 1976), certif. den., 73 N.J. 57 (1977).
The other issues raised by defendant are clearly without merit and require no further discussion.
Accordingly, the order under review is affirmed.
NOTES
[1] We need not reach or decide any issue concerning the collection of the penalty or imprisonment for non-payment.