THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. 1979
PONTIAC TRANS AM, COLOR GREY, NEW JERSEY REGIS-
TRATION NO. 223–PYX, SERIAL NO. 2W87K9N191373, DE-
FENDANT-APPELLANT.

Argued October 23, 1984—Decided February 21, 1985.

*Joseph C. Santoliquido* argued the cause for appellant (*Luis R. Sanchez,* attorney).

*Robert C. Griffin*, Assistant Prosecutor, argued the cause for respondent (*John H. Stamler*, Union County Prosecutor, attorney).

*Linda L. Yoder*, Deputy Attorney General, argued the cause for *amicus curiae*, Attorney General (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

We granted certification, 96 *N.J.* 299 (1984), to determine the constitutionality of enforcing the New Jersey forfeiture statute, *N.J.S.A.* 2C:64-1 to -9, against a property owner who allegedly was unaware of the illegal use of his property and who did all that could reasonably be expected to prevent that use. Appellant, Orlando T. Figueroa (Mr. Figueroa), is the registered owner of a 1979 Pontiac Trans Am (the Pontiac) forfeited to Union County because his son, Orlando Figueroa (Orlando), used the car to transport stolen property. Mr. Figueroa asserts he was unaware that his son intended to use the property for illegal purposes and that he did all that could reasonably be expected to prevent that use.

In an unreported decision, the Appellate Division affirmed the Law Division's grant of a summary judgment in favor of the County. We reverse and remand the matter to the Law Division for a plenary hearing.

I

On July 25, 1982, Orlando and a companion were driving home from the shore in Mr. Figueroa's Pontiac. Both young men had been drinking alcoholic beverages. At approximately 1:00 a.m., they stopped at a street corner in Elizabeth. They broke the windows of a parked Corvette, removed the car's "T-roof," placed it in the trunk of the Pontiac, and left. According to Orlando, neither he nor his companion planned to steal the T-roof; instead, he attributed the theft to excessive

drinking and a spontaneous impulse. A witness observed the theft and reported it to the police. The police verified the registration of the Pontiac, went to the Figueroa residence, and located the stolen T-roof in the trunk of the Pontiac. Orlando was indicted for crimes arising out of the event, but, because it was his first offense, he was accepted into the Pretrial Intervention Program. See *R.* 3:28.

Pursuant to *N.J.S.A.* 2C:64-3, the county prosecutor, acting on behalf of the State, instituted a summary action under Rule 4:67 for the forfeiture of the Pontiac. On the return date of the order to show cause, the Law Division, without taking any testimony, entered judgment vesting title to the car in the County. The Appellate Division affirmed without discussing the constitutionality of the statute.

## II

As described in this case, forfeiture refers to the divestiture without compensation of title to property used to further criminal activity. Statutes authorizing forfeiture stem from ancient religious beliefs that religious expiation was required of a chattel that caused a person's death. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 *U.S.* 663, 680–81, 94 *S.Ct.* 2080, 2090, 40 *L.Ed.*2d 452, 466–67 (1974) (*Calero-Toledo* ). Forfeiture was transported into English common law, where property causing death could be forfeited to the Crown for pious purposes as a deodand. O.W. Holmes, *The Common Law,* pp. 23–24 (1881) (Holmes); 2 F. Pollock & F. Maitland, *The History of English Law* 473–74 (2d ed. 1898). The term "deodand" derives from the latin phrase *Deo dandum,* meaning "a thing to be given to God," and refers to a chattel that causes death. *Black's Law Dictionary* 392 (5th ed. 1979); *Bouvier's Law Dictionary* 844 (8th ed. 1914). Eventually, forfeiture actions lost their religious connotations and became a source of revenue for the Crown, which justified its action as a penalty for the carelessness of the owner. *Calero-Toledo, supra,* 416 *U.S.*

at 680–83, 94 *S.Ct.* at 2090–91, 40 *L.Ed.*2d at 466–68; Comment, "Civil Forfeiture and Innocent Third Parties," 3 *N.Ill.U.L.Rev.* 323, 326–31 (1983); Note, "Forfeiture Seizures and the Warrant Requirement," 48 *U.Chi.L.Rev.* 960, 961–63 (1981).

■ Although the law of deodands did not become part of the common-law tradition of the United States, *Calero-Toledo, supra,* 416 *U.S.* at 682–83, 94 *S.Ct.* at 2091–92, 40 *L.Ed.*2d at 468, modern forfeiture statutes descend from this ancient heritage. *U.S. v. U.S. Coin & Currency,* 401 *U.S.* 715, 720, 91 *S.Ct.* 1041, 1044, 28 *L.Ed.*2d 434, 438 (1971). Thus, forfeiture actions, such as those authorized by *N.J.S.A.* 2C:64–3, are conducted as *in rem* civil proceedings with the property itself as the formal defendant. *See, e.g., U.S. v. U.S. Coin & Currency, supra,* 401 *U.S.* at 719–20, 91 *S.Ct.* at 1044, 28 *L.Ed.*2d at 438 (forfeiture action instituted as an *in rem* proceeding against the money itself); *U.S. v. One (1) 1976 Lincoln Mark IV,* 462 *F.Supp.* 1383, 1388 (W.D.Pa.1979) (forfeiture proceedings are *in rem* actions against the vehicle itself); *U.S. v. One (1) 1971 Chevrolet Corvette,* 393 *F.Supp.* 344, 347 (E.D.Pa.1975) (forfeiture proceeding is an *in rem* action against the vehicle); *Farley v. $168,400.97,* 55 *N.J.* 31, 37 (1969) (statutory forfeiture is limited to the offending property itself); *Spagnuolo v. Bonnet,* 16 *N.J.* 546, 560 (1954) (a forfeiture proceeding is directed against the thing itself); *Kutner Buick, Inc. v. Strelecki,* 111 *N.J.Super.* 89, 99 (Ch.Div.1970) (forfeiture proceedings are actions against the offending property itself); *State v. Garcia,* 114 *N.J.Super.* 444, 447 (Law Div.1971) (forfeiture proceedings are actions against the offending property itself); 36 *Am.Jur.*2d *Forfeitures & Penalties* § 17 at 623 (1968) (forfeitures may be effected as civil *in rem* actions against the property itself).

■ Modern forfeiture statutes are supported by more contemporary considerations than those that originally gave rise to forfeiture. At present, forfeiture proceedings are often viewed as the only adequate means to protect against a particular offense, *e.g.,* the forfeiture of a still may be the only way to

prevent the continued illegal distillation of alcohol. *Calero-To-ledo*, 416 *U.S.* at 684–85, 94 *S.Ct.* at 2092–93, 40 *L.Ed.*2d at 469. Consistent with that viewpoint, the New Jersey Organized Crime Task Force proposed the use of forfeiture as a civil remedy to combat organized crime. *Report of the Organized Crime Task Force*, at 1–31 (1978). In addition, forfeiture is regarded as a means of encouraging owners to be more responsible in lending their personal property. *State v. One (1) 1979 Pontiac Sunbird*, 191 *N.J.Super.* 578, 583 (App.Div.1983). Ultimately, forfeiture statutes are justifiable to the extent that they are a legitimate exercise of the police power. *Kutner Buick, Inc. v. Strelecki, supra,* 111 *N.J.Super.* at 99.

▮ Despite their utility to law enforcement officials, forfeitures remain disfavored in the law. *State v. One (1) Pontiac Sunbird, supra,* 191 *N.J.Super.* at 584; *State v. One (1) Ford Van Econoline,* 154 *N.J.Super.* 326, 331–32 (App.Div.1977), certif. den., 77 *N.J.* 474 (1978); Note, *supra,* "Forfeiture Seizures and The Warrant Requirement," 48 *U.Chi.L.Rev.* at 961. One problem is that forfeitures result in the taking of private property for public use without compensation to the owner. The United States Supreme Court has recognized this problem under the fifth amendment of the United States Constitution, *U.S. v. U.S. Coin & Currency, supra,* 401 *U.S.* at 720–21, 91 *S.Ct.* at 1044, 28 *L.Ed.*2d at 439; similar concerns arise under article 1, paragraph 20 of the New Jersey Constitution. Accordingly, New Jersey courts have required that forfeiture statutes be strictly construed "and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation." *State v. One (1) Ford Van Econoline, supra,* 154 *N.J.Super.* at 331–32.

### III

In defining property subject to forfeiture, *N.J.S.A.* 2C:64–1 establishes two broad categories: (1) prima facie contraband, such as unlawfully possessed controlled dangerous substances

and firearms, and (2) other kinds of property, such as conveyances "utilized in furtherance of an unlawful activity * * *." As originally enacted, *N.J.S.A.* 2C:64–1 applied only to "the defendant's interest" in the forfeited property. In 1981, however, the statute was broadened to apply to "any interest" that falls within the statutory definition of property subject to forfeiture.

A related statute, *N.J.S.A.* 2C:64–5, originally exempted property of an owner from seizure unless the owner "was a consenting party or privy to its unlawful possession, use, or sale." The "right of any person holding an interest in property subject to seizure" could not be forfeited, unless that "person had knowledge of or consented to any act or omission upon which the right of forfeiture is based."

As a result of the 1981 amendment, that statute now provides:

> No forfeiture under this chapter shall affect the rights of any lessor or any person holding a perfected security interest in property subject to seizure unless it shall appear that such person had knowledge of or consented to any act or omission upon which the right of forfeiture is based. Such rights are only to the extent of interest in the seized property and at the option of the entity funding the prosecuting agency involved may be extinguished by appropriate payment.

Although the 1981 amendment excised the exemption applicable to owners generally, it provided an express exemption for lessors and lienholders who did not know of or consent to the unlawful use of the property. Strictly speaking, therefore, the statute provides an exemption for any innocent lessor, including a parent who leases a car to a child.

■ If read literally, the statute would be constitutionally infirm, its reach extending not only to the property of criminals, but also to that of innocent owners who did all they reasonably could to prevent misuse of their property. So read, the statute would require the forfeiture of property stolen from innocent owners and thereafter unlawfully used by thieves.

Because forfeitures are not generally favored in the law, provisions relieving owners from the application of forfeiture statutes are liberally construed. *State v. One (1) Ford Van Econoline, supra,* 154 *N.J.Super.* at 331; *State v. Garcia, supra,* 114 *N.J.Super.* at 447. Consistent with that perspective, we construe *N.J.S.A.* 2C:64–5 to exempt not only lessors and lienholders but also innocent owners who can prove that they were "uninvolved in and unaware of the wrongful activity, [and] that [they] had done all that reasonably could be expected to prevent the proscribed use of [their] property." *Calero-Toledo, supra,* 416 *U.S.* at 689, 94 *S.Ct.* at 2095, 40 *L.Ed.*2d at 471. As to these owners, it "would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." *Id.* at 690, 94 *S.Ct.* at 2095, 40 *L.Ed.*2d at 472. A stricter interpretation of the statute would run afoul of constitutional prohibitions against taking property without due process. *Id.*

In *Calero-Toledo,* the Court upheld the constitutionality of Puerto Rico's forfeiture statute as applied to an innocent lessor whose yacht was seized by the Puerto Rican government after the lessee was arrested for possession of marijuana. *Id.* at 668, 94 *S.Ct.* at 2084, 40 *L.Ed.*2d at 459. The statute under review in *Calero-Toledo,* like *N.J.S.A.* 2C:64–5, did not expressly allow redress to innocent owners. Specifically, the statute, 24 *L.P.R.A.* § 2512(a)(4), provided for forfeiture of

[a]ll conveyances, including aircraft, vehicles, mount or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property * * *. [*Id.* at 665, 94 *S.Ct.* 2083, 40 *L.Ed.*2d at 458 n. 1.]

On appeal, the yacht owner challenged the forfeiture on two grounds. It claimed first that the seizure violated its right to notice and hearing. *Id.* at 668, 94 *S.Ct.* at 2084, 40 *L.Ed.*2d at 459–60. In the present case, Mr. Figueroa does not complain of a violation of procedural due process. In any event, *N.J.S.A.* 2C:64–3 provides for forfeiture procedures that include notice and the opportunity to be heard. Those procedures were fol-

lowed in the present case, and Mr. Figueroa not only received notice but also participated in the forfeiture proceedings in the Law Division. Hence, we shall not dwell on considerations of procedural due process.

In *Calero-Toledo*, the owner also argued that it was innocent of any wrongdoing and that as applied to it, the forfeiture statute violated the constitutional guarantee against the taking of property without just compensation. 416 *U.S.* at 668, 94 *S.Ct.* at 2084, 40 *L.Ed.*2d at 459–60. In rejecting the yacht owner's contention, the Court found the statute to be a legitimate exercise of the police power, achieving both punitive and deterrent goals by preventing further illegal use of the property. The Court also stated that at least as to some innocent persons, application of the statute was constitutional and would encourage a greater exercise of care in lending property to others. *Id.* at 688, 94 *S.Ct.* at 2094, 40 *L.Ed.*2d at 471.

By contrast, the Court found the statute unduly oppressive when applied to those owners who had not consented to and were unaware of the unlawful use of their property, provided they had done all that reasonably could be expected to prevent that use. *Id.* at 689, 94 *S.Ct.* at 2094–95, 40 *L.Ed.*2d at 471. On the facts, the Court concluded that Pearson Yacht Company voluntarily entrusted the yacht to the lessees and that it had failed to prove that it had done all it reasonably could to prevent the illegal use of its property. *Id.* at 690, 94 *S.Ct.* at 2095, 40 *L.Ed.*2d at 472.

Although the *Calero-Toledo* criteria regarding the rights of innocent owners are dicta, they remain intrinsically sound. Indeed, many courts have adopted those criteria as the test for the constitutionality of forfeiture statutes. *See, e.g., U.S. v. One (1) 1975 Pontiac Lemans,* 621 *F.*2d 444, 448 (1st Cir.1980) (vehicle forfeited when wife failed to allege that she did all she reasonably could to prevent husband from using her car in his bookmaking operation); *U.S. v. One (1) 1976 Lincoln Mark IV,*

*supra,* 462 *F.Supp.* at 1387, 1390–92 (forfeiture disallowed when owner proved he had no knowledge or reason to suspect that his brother-in-law would use his car to transport heroin); *U.S. v. One (1) Mercury Cougar XR–7,* 397 *F.Supp.* 1325, 1328–29 (D.Cal.1975) (forfeiture disallowed when owner proved that she was not involved in or aware of her boyfriend's use of her car to sell heroin); *U.S. v. One (1) 1971 Chevrolet Corvette, supra,* 393 *F.Supp.* at 348 (wife's vehicle forfeited when she was aware of husband's past criminal activity, registered car in both names, and allowed husband to use car); *State v. One (1) 1979 Pontiac Sunbird, supra,* 191 *N.J.Super.* at 586–87 (case remanded for application of *Calero-Toledo* criteria when owner challenged the forfeiture of his vehicle because he had no prior knowledge of wrongful use).

Following the lead of the United States Supreme Court, we construe *N.J.S.A.* 2C:64–1 and –5 to exclude innocent owners who did not consent to or know of the illegal use of their property and who did all that reasonably could be expected to prevent that use. Thus construed, the statute survives the constitutional attack that it constitutes an unlawful taking of property without just compensation. *See Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104 (1983) ("judicial surgery" used to save from constitutional attack the statutory definition of drug paraphernalia).

Reading into the statute an exemption for innocent owners who use due care to prevent unlawful use of their property is consistent with the legislative intent as expressed elsewhere in the statute. For example, *N.J.S.A.* 2C:64–2 provides that the forfeiture of *prima facie* contraband, such as controlled dangerous substances, is subject to the rights of owners. Because the Legislature acknowledged that the forfeiture of an item such as drugs was subject to rights of owners, it is reasonable to assume that the Legislature intended to provide a similar exemption for property that is not *prima facie* contraband. Furthermore, *N.J.S.A.* 2C:64–8 gives innocent owners up to

three years to file a claim, if with due diligence they could not have discovered the seizure of the contraband. By restricting relief under *N.J.S.A.* 2C:64–8 to owners unaware of the unlawful use of the property, the Legislature apparently recognized that knowledge was relevant to forfeiture. Thus, the Legislature has provided for forfeiture of the property of owners who allow their property to be used unlawfully or whose carelessness causes their property to be so used. A statutory scheme that authorizes the forfeiture of property owned by one who had no knowledge of its unlawful use and who had taken all reasonable precautions to prevent that use, however, could effect an unconstitutional taking.

## IV

Determining what an owner could reasonably be expected to do to prevent the proscribed use of his or her property must be approached on a case-by-case basis. If an owner knows or should know of a potential wrongful use of his or her property, that owner should take some affirmative steps to prevent the use. If, however, the owner does not have actual or constructive knowledge, the duty to prevent the wrongful use is reduced, if not eliminated. In short, the proper application of the standard depends on the facts of the case. *See U.S. v. One (1) 1976 Lincoln Mark IV, supra,* 462 *F.Supp.* at 1391 (denying forfeiture where owner was uninvolved in and unaware of his brother-in-law's use of his car to transport heroin).

Whether a property owner knew or should have known of the illicit use of his or her property depends on a variety of factors. Among them are the relationship between the owner and user, the manner in which the owner transferred possession of the property to the wrongful user, the nature of the property surrendered, and the freedom of use or scope of permission given. *See, e.g., U.S. v. One (1) 1975 Pontiac Lemans, supra,* 621 *F.*2d at 448 (claimant-wife should have suspected that her husband would use her car for illegal

activities when she knew husband to be a bookie for the past 40 years); *U.S. v. One (1) 1972 Chevrolet Blazer*, 563 *F*.2d 1386, 1389 (9th Cir.1977) (on remand, the court must consider, among other things, whether the claimant voluntarily gave up possession of the vehicle); *U.S. v. One (1) 1974 Mercury Cougar XR-7*, *supra*, 397 *F.Supp.* at 1327 (claimant, who had lived with her boyfriend for one year, was "very familiar" with him and had no reason to suspect that he would use her car in an unlawful activity).

The relationship between the owner and the user of the car in this case is one of the closest of familial relationships, that of parent and child. We believe that the Legislature did not intend that a parent should cross-examine a child, at least one who has no criminal record, each time that child uses the parent's car. We believe also that the Legislature did not intend to immunize parents from the risk of forfeiture if they relinquish all control of their car and casually turn the car keys over to their child. Furthermore, a parent who knows or who has reason to know that the child intends to use the car to carry contraband should not allow the child to use the car. Ultimately the test resolves to an assessment of the reasonableness of the parent's conduct in preventing the proscribed use of the car.

In the present case, Orlando, who had no prior criminal record, was a 20-year-old college student living at home. The State contends that Mr. Figueroa owned two other cars and owned only the bare legal title to the Pontiac. It further asserts that Orlando was the beneficial owner of and had unrestricted use of the car. On the sparse record before us, we cannot determine the contested issues, and as the State acknowledged at oral argument, a remand for a plenary hearing is necessary. On remand, the trial court should consider all of the relevant circumstances, including the relationship between the parties, the legal and beneficial ownership of the car, the scope of permission given, and such other facts as relate to the

father's knowledge of the illicit use of the car and his exercise of due care to prevent that use.

To summarize, we hold that *N.J.S.A.* 2C:64–1 to –9 is facially constitutional and that it is not impermissibly vague in all of its applications. *State v. Lee,* 96 *N.J.* 156, 167 (1984), *appeal dismissed,* —— *U.S.* ——, 105 *S.Ct.* 890, 83 *L.Ed.*2d 906 (1985); *Town Tobacconist v. Kimmelman, supra,* 94 *N.J.* at 118–19. The statute applies to owners who use their property for criminal purposes and to those who knowingly allow others to use their property for such purposes. The statute also applies to innocent owners who do not use due care to prevent the unlawful use of their property by third parties. On the present record, it appears that Mr. Figueroa was not involved in or aware of the wrongful activity, but we cannot determine whether he did all that reasonably could be expected to prevent the proscribed use of his car.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices POLLOCK, CLIFFORD, SCHREIBER, HANDLER, O'HERN and GARIBALDI—7.

*For affirmance*—None.