570 A.2d 1304

STATE OF NEW JERSEY, PLAINTIFF, v. UNITED STATES CURRENCY, NAMELY ONE THOUSAND THREE HUNDRED AND TEN DOLLARS ($1310.00) AND 120 LIVINGSTON STREET, WESTFIELD, NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided January 17, 1990.

*Harold C. Knox,* for plaintiff.

*Amy Bard,* for defendant Joseph Lundy.

*Robert T. Pickett,* for defendant Mary Lundy.

WERTHEIMER, J.S.C.

This matter comes before the court via a forfeiture hearing pursuant to *N.J.S.A.* 2C:64–1 *et seq.* wherein the State seeks an order for forfeiture against defendants' interests in real property located at 120 Livingston Street, Westfield, New Jersey. There appears to be no reported case wherein the State has sought to apply the statute against real property.

The applicable statute, *N.J.S.A.* 2C:64–1, reads in pertinent part:

(a) Any interest in the following shall be subject to forfeiture and no property right shall exist in them: ...

(2) All property which has been ... utilized in furtherance of an unlawful activity, including, but not limited to, conveyances intended to facilitate the perpetration of illegal acts, or buildings or premises maintained for the purpose of committing offenses against the State.

*N.J.S.A.* 2C:64–3 details the procedures to be followed to implement forfeiture. Subsection (f) of that statute raises the rebuttable presumption that the property was utilized in furtherance of an unlawful activity through evidence of a conviction of a criminal offense in which the seized property was used for said activity. The question that faces this court, therefore, is what interest in said property, if any, is subject to forfeiture and to what extent. A review of the pertinent history concerning the property's ownership is necessary in order to consider these questions.

Joseph Lundy and Mary Price were married in March 1961 and purchased 120 Livingston Street (hereinafter "the property") as tenants by the entirety in March 1968. One child, Joseph, Jr., was born of the marriage. In 1971, Mary Lundy separated from Joseph, Sr., left the property and took up residence elsewhere in Union County. Joseph and Mary remained married but continued to live separate and apart at all

relevant times thereafter. Joseph, Jr. remained with his father at the property until he became emancipated in 1984.

Although separated from her husband, Mary would visit the property over the years to look in on her son, husband and the property on an average of once a month. Because she did not live there and had not maintained intimate relations with her husband, Mary testified that her visits were limited to first floor common areas, *e.g.*, the living room, kitchen and bathroom.

Joseph was arrested in 1983 on an unrelated possession of CDS charge but he never told Mary. Throughout the years, Joseph maintained the property and paid the mortgage, taxes, utilities and other expenses without contribution from Mary, despite the fact from 1986 forward he was unemployed. Mary was aware of his unemployment but never concerned herself with how Joseph met those expenses.

On January 30, 1988, Joseph Lundy was arrested by the Westfield Police Department on charges which alleged that he distributed drugs from the property. This court finds, as a result of this hearing, previous plea negotiations and the materials submitted in support of a search warrant for said property, that Joseph Lundy used the property in furtherance of his drug distribution scheme, specifically by holding, packaging and selling CDS from the premises. On April 28, 1988 the State initiated this action in forfeiture against certain items found in the house and the real property in question. Only the latter is in issue now.

Testimony at the hearing divulged that Joseph and Mary agreed at the time of their separation that he was to remain on the premises and utilize it for their son's benefit while he was a minor. Thereafter, the property was to be sold at an unspecified point in time, but such a sale was never effected. From November 1986 on, Joseph claims to have had difficulty in making his mortgage payments and the mortgage company moved to foreclose *circa* March 1988. He professes that is the

reason he transferred his interest in the premises to Mary in July 1988. On January 9, 1989, Joseph Lundy entered a guilty plea before this court to counts 1 and 2 of indictment no. 88-05-713 which alleged possession of CDS (cocaine) and possession with intent to distribute.

Defendants oppose the State's application on the following grounds:

(1) Mary Lundy is an innocent purchaser and owner and is thereby protected from forfeiture by *N.J.S.A.* 2C:64-5(b);

(2) The transfer to Mary Lundy in July 1988 extinguished Joseph's interest in the property;

(3) Had Joseph known of the State's intent to seek forfeiture of the property he would not have entered a plea of guilty; and

(4) The State has waived its right to seek forfeiture by not making same a condition of defendant's guilty plea.

The findings of this court leave no doubt that the property was used to facilitate the CDS distribution scheme Joseph pursued and, therefore, the property is subject to forfeiture as to his interest. However, at the time of the illegal activity Mary was a tenant by the entirety and at the time of the hearing she was the sole owner. What do these facts portend?

This court has little difficulty in disposing of Mary's claim that she was an innocent purchaser of Joseph's interest and, therefore, protected from the forfeiture law. Her "purchase" in July 1988 of Joseph's tenancy by the entirety was at best untimely, for if a judgment of forfeiture is entered it would "relate back to the commission of the wrongful act and takes date from the wrongful acts, not from the date of sentence or decree." *Spagnuolo v. Bonnet,* 16 *N.J.* 546, 559, 109 *A.*2d 623 (1954). Title to all of Joseph's interest, therefore, vested in the State, absent some other viable defense, on January 30, 1988 (the time the search warrant was executed), *e.g.,* the latest time possible for the commission of the illegal act. *Spagnuolo, supra* at 560, 109 *A.*2d 623; *see also Farley*

v. *$168,400.97*, 55 *N.J.* 31, 40, 259 *A.*2d 201 (1969), *State v. Rodriquez*, 138 *N.J.Super.* 575, 578, 351 *A.*2d 784 (App.Div. 1976), aff'd 73 *N.J.* 463, 375 *A.*2d 659 (1977).

Therefore, Joseph's transfer of his interest to Mary is void *ab initio* as his title had previously vested in the State. Additionally, his protestation that he would not have pled guilty if he knew the State was seeking forfeiture is specious and is belied by the fact that the forfeiture action was initiated on April 28, 1988, and service of same was made upon him seven months before his plea.

■ The lone remaining issue, therefore, is what, if anything, happens to Mary's original tenancy by the entirety. First, it should be emphasized all parties agree that the Lundys owned this property as tenants by the entirety. Thus, under New Jersey law each spouse has a right of ownership and that right is "indestructible by unilateral action." *King v. Greene*, 30 *N.J.* 395, 412, 153 *A.*2d 49 (1959). While "judgment creditors of either spouse may levy and execute upon (each's) separate rights of survivorship," the other spouse's life interest or right of survivorship cannot be affected by his or her spouse's unilateral action or liabilities. *King v. Greene, supra; Schulz v. Ziegler*, 80 *N.J.Eq.* 199, 83 *A.* 968 (E. & A.1912). Therefore, even though the State may obtain Joseph's interest, it cannot affect Mary's life estate or her right of survivorship, unless it is proven that Mary has also forfeited her title to the property. Otherwise, the State becomes a tenant in common with Mary during the joint lives of Mary and Joseph. *King v. Greene, supra*, 30 *N.J.* at 412, 153 *A.*2d 49, but her interest and right to the property cannot be affected nor can her right to survivorship. *Schulz v. Ziegler, supra*, 80 *N.J.Eq.* at 200, 83 *A.* 968. The rationale for this is that:

> The husband and wife, being considered one person in law, cannot take the estate of moieties, but both are seized of the entirety ... *per tout, et non per my* ... The consequence of this peculiar estate is, ... the whole must remain to the survivor. There must be survivorship, because the interest cannot be served,

[*Den ex dem. Wyckoff v. Gardner*, 20 *N.J.L.* 556, 559 (Sup.Ct. 1846)]

The State takes the position, however, that Mary knew of "her husband's involvement with CDS, his lack of employment and took no action to prevent (the property) from becoming the hub of a CDS distribution network." Mary denies such knowledge, other than his lack of employment, and asserts the affirmative defense of *N.J.S.A.* 2C:64–5(b) that:

> Property seized under this chapter shall not be subject to forfeiture if the owner of the property establishes by a preponderance of the evidence that [she] was not involved in or aware of the unlawful activity and that [she] had done all that could reasonably be expected to prevent the proscribed use of the property by [Joseph].

The State does not contend that Mary was involved in distribution. Nor is there an iota of direct evidence that Mary was "involved in or aware of the unlawful activity." The State contends, however, that Mary did not do "all that could reasonably be expected to prevent the proscribed use of the property" but does not specify what she could or even should have done. It is, indeed, difficult to conceive what Mary could have done when she did not live there. Her visits were confined to common areas, and her interest in the property was confined, by informal mutual agreement, to the sale of the property at an unspecified time once her son moved out. The court finds it significant that Mary did not live on the property; if she did, her prescribed duties concerning proscribed activity would be palpable.

■ Whether a property owner knew or should have known of the illicit use of his or her property depends upon a variety of factors, to include: the relationship between the owner and user, the manner in which possession was transferred to the wrongful user, "the nature of the property surrendered," and the owner's ability to dictate to the user. *State v. 1979 Pontiac Trans Am, Color Grey*, 98 *N.J.* 474, 486, 487 *A.*2d 722 (1985). It is patently clear, under the facts of the case *sub judice*, that Mary had neither the ability nor the reason to dictate to Joseph

that the property not be used for illegal purposes, as she was ignorant of his criminal proclivities.

All of this, when taken in light of the principle that generally forfeitures are disfavored in the law, dictates that Mary's original tenancy not be defeated. *State v. One Ford Van Econoline*, 154 *N.J.Super.* 326, 381 *A.2d* 387 (App.Div.1977).

It is precisely "(b)ecause forfeitures are not generally favored in the law [that] provisions relieving owners from the application of forfeiture statutes are liberally construed." *State v. 1979 Pontiac Trans Am, Color Grey, supra*, 98 *N.J.* at 483, 487 *A.2d* 722.

Therefore, it is the order of this court for the reasons set forth above that the attempted transfer of Joseph's interests to Mary was void *ab initio* and his interest is properly forfeited to the State of New Jersey. Mary's right, title and interest in the property remains unaffected. Therefore, if Joseph predeceases her, she will enjoy her right of survivorship. If Mary dies first, the State then enjoys Joseph's right of survivorship. *King v. Greene, supra*.