OPINION OF THE COURT
ALDISERT, Circuit Judge.
In this appeal by New Jersey state officials, we must decide whether a federal bankruptcy or district court had the power under the automatic stay provision in the Bankruptcy Code, 11 U.S.C. § 362(a), to collaterally attack the merits of a facially valid judgment of a state court.
The State of New Jersey obtained a state court judgment in its favor in a civil forfeiture action against the property of appellee Norma Y. James (“Debtor”). The bankruptcy court vacated the state court judgment after determining that the Debtor’s prior Chapter 7 bankruptcy filing had triggered the automatic stay under section 362(b), and that the state forfeiture proceedings did not fall within the “police power” exception to the automatic stay because the State had no legitimate interest in the funds seized. The district court affirmed for different reasons, ruling that although the “police power” exception ordinarily does apply to civil forfeiture proceedings, it did not apply to this particular forfeiture because the state court wrongly decided the case on the merits.
We hold that it was improper for the bankruptcy and district courts to collaterally examine the merits of the state court proceedings and, for the reasons that follow, will reverse the judgment of the district court 120 B.R. 802 that affirmed the bankruptcy court’s order.
I.
The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(a). The district court had jurisdiction over the final order of the bankruptcy court based on 28 U.S.C. § 158(a). We have jurisdiction on appeal based on 28 U.S.C. § 158(d). The appeal was timely filed under Rule 4(a), F.R.A.P.
II.
On March 2, 1988, New Jersey state troopers pulled over a car for speeding in that state. Owned by the Debtor, Norma James, the car was driven by Patrick Brown and was en route to New York City. Neither Brown nor the passenger had a valid driver’s license, but they nonetheless consented to a search of the vehicle. During the search the officers discovered a duffle bag containing a yellow plastic bag which held eight bundles of currency total-ling $7,990: $1,000 in each of seven bundles and $990 in the eighth. The troopers took Brown and his passenger to a local police station where a trained narcotics detection dog “alerted” to something in the currency, indicating that it possessed the odor of an unidentified, and possibly controlled, substance. However, a subsequent criminal investigation uncovered no other evidence of illegal drugs or of a drug transaction involving the money. No drug-related criminal charges were lodged against Brown, his passenger or the Debtor, and the car was returned to the Debtor.
Brown told different stories to the police. He initially said that he owned all the money but later stated that only $2500 was his and that he had borrowed $5500 from the Debtor. The police retained the seized currency because they suspected that it related to an illegal drug transaction, ostensibly *48 based on the police dog’s reaction to the money, the inconsistencies in Brown’s statements and the manner in which the currency was hidden from view.
New Jersey (now appellants individually named in their official capacities) instituted a civil forfeiture action against the money on May 31, 1988, pursuant to N.J.Stat.Ann. 2C:64-1, which provides for civil forfeiture of proceeds of illegal activity. The State offered no independent evidence during the course of the forfeiture action to show that the money had been used in, or was received pursuant to, an illegal drug or other criminal transaction.
The State served the Debtor with notice of the forfeiture action, but she failed to respond within the requisite time period. She subsequently obtained counsel, who reached an agreement with the State’s attorney to continue the matter. Through her attorney, the Debtor claimed full ownership of the funds, which she allegedly placed in Brown’s possession so that he could transport them to her business partner in New York. Brown made no claims to the money in the forfeiture proceeding. The Debtor’s counsel, however, failed to file the agreed upon continuation. There is some indication that counsel failed to do so because the Debtor failed to pay a fee. The State then filed a motion for a default judgment based on the pleadings.
On July 18, 1989, the Debtor received notice that a default judgment hearing would be held on July 21. She did not appear at the state court hearing, but instead she filed for bankruptcy on July 19, the next day, and contends that she informed the State attorney of this filing on that same day. The court entered default judgment on July 21, 1989. The State attorney claims that the State had no knowledge of the bankruptcy filing until after the default judgment was entered.
III.
On September 21, 1989, the Debtor filed a complaint in bankruptcy court alleging that the State had violated 11 U.S.C. § 362, the automatic stay provision of the Bankruptcy Code. She sought an order under 11 U.S.C. § 542, the Act’s turnover provision, directing the State to turn the disputed $7,990 over to her Trustee. The State filed an answer, raising various affirmative defenses, including that the Trustee was a necessary party/plaintiff and had not been joined and that the bankruptcy court lacked jurisdiction over the forfeiture action. The State also filed a motion to dismiss on jurisdictional grounds.
On March 13, 1990, the bankruptcy court determined that it had jurisdiction over the proceeding, denied the State’s motion to dismiss, vacated the New Jersey state court default judgment, directed the Debt- or to join the Trustee as a necessary plaintiff and scheduled a supplemental hearing for April 5, 1990, at which time the ultimate disposition of the case would be determined. The court also determined that the forfeiture action was a core proceeding. See Opinion of Bankruptcy Court at 9-12; J.A. at 18-21. On March 23, 1990, the State filed an interlocutory appeal to the district court. Ruling that the State had proffered no evidence of an illegal drug or other criminal transaction, the court dismissed the appeal without prejudice on April 11, 1990.
After the supplemental hearing on April 26, at which only the Debtor testified, the bankruptcy court proceeded into an evaluation of the merits of the state forfeiture proceedings. It determined that the State produced no evidence that the seized funds were received by the Debtor pursuant to criminal activity. The only putative evidence of criminality was the police dog’s reaction to the seized currency. Neither the Debtor nor any of those in the Debtor’s car had been charged with any criminal offense related to the seized funds.
The bankruptcy court made three significant findings: First, it held that the “governmental unit” exception of section 362(b)(4) to the automatic stay provision of section 362(a) did not apply; second, that the State had no basis for forfeiture and that the New Jersey state court default judgment was therefore a nullity; and third, that the matter before it was a “core proceeding.” On May 1, 1990, the bank *49 ruptcy court entered a final order in favor of the Debtor on her section 362 and section 542 claims and ordered the State to turn over the seized funds to the Debtor’s Trustee. The court ordered the parties to agree upon reasonable attorney’s fees and costs to be awarded the Debtor pursuant to 11 U.S.C. § 362(h).
IV.
The State defendants appealed to the district court, which, except for the attorney’s fees award, affirmed the bankruptcy court’s order for different reasons. The district court disagreed with the bankruptcy court and concluded that this State forfeiture action was excepted from the automatic stay by section 362(b)(4) because they are “not out to collect monetary debts but to advance public policy in the area of law enforcement.” Memorandum Opinion at 27; J.A. at 249. However, the court determined that section 362(b)(4), which excepts state police power actions from the automatic stay, only applies if the bankruptcy court first determines that the relevant state action was properly decided. Id. at 25-29; J.A. at 247-251. Like the bankruptcy court, the district court, too, proceeded into an evaluation of the merits of the state case and concluded that the State had not presented to the bankruptcy court a reasonable factual basis for prevailing in the forfeiture proceeding. The court therefore held that the exception of section 362(b)(4) applied legally but not factually to the scenario and affirmed the order of the bankruptcy court.
V.
Because these issues require the interpretation and application of legal precepts, the standard of review is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981).
VI.
Section 362(a) of the Bankruptcy Code provides in part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....
11 U.S.C. § 362(a)(1). Section 362(b) creates several exceptions to the automatic stay, including the exception listed under section 362(b)(4):
(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power....
11 U.S.C. § 362(b)(4). The Appellants argue that the State’s seizure and forfeiture of the $7,990 amounts to an exercise of its “police or regulatory power,” entitling them to an exception from the scope of the stay provision and that neither the bankruptcy court nor the district court had the authority to litigate the merits of a matter properly before a state court.
In addressing the merits of the state court forfeiture proceeding, the district court decided that the State did not exercise its police power in a legitimate fashion, and it therefore vacated the state court default judgment:
Section 362(b)(4) exempts from the automatic stay “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.” Yet the State must have some fact basis consistent with the authorizing power of the forfeiture statute for claiming that it is enforcing its police or regulatory power. It cannot merely act at *50 will and claim the protection of the police/regulatory power exemption. It cannot, as in this case, seize, retain, and claim ownership of property with no basis in fact for claiming that the property is subject to forfeiture under state law. Otherwise states would be granted unbridled discretion to preempt federal bankruptcy law by the mere seizure of property and subsequent utterance of the magic word “forfeiture.”
Memorandum Opinion at 28; J.A. at 250. The court thus determined that on the basis of the facts presented, the police power exception to the automatic stay could not be applied to this case.
On appeal, the State appellants argue that the bankruptcy court had “no authority whatsoever to collaterally examine the validity of the State proceeding.” Brief for Appellants at 14. They argue that the bankruptcy court should have awaited conclusion of the state court proceedings, where the validity of those proceedings could be addressed and determined.
VII.
Before we meet the sensitive issue of federal-state comity, we must meet the threshold question of whether the New Jersey state forfeiture proceeding, in and of itself, qualified as a valid exception to the automatic stay provision. We must decide whether the currency seizure proceeding in the state court constituted “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.” 11 U.S.C. § 362(b)(4). The bankruptcy court ruled as a matter of law that the seizure here did not. The district court disagreed, and said that the exception facially applied, but that the facts of this case did not bring it within the exception.
If the State’s forfeiture action does not fit within the section 362(b)(4) exception and the automatic stay does apply, as the district court determined, the subsequent state court default judgment arguably could be considered void and without effect. See Kalb v. Feuerstein, 308 U.S. 433, 438-40, 60 S.Ct. 343, 345-47, 84 L.Ed. 370 (1940) (judgment in violation of automatic stay void). But see Sikes v. Global Marine, Inc., 881 F.2d 176, 178 (5th Cir.1989) (violation of automatic stay voidable rather than void ab initio); In re Schwartz, 119 B.R. 207 (9th Cir. BAP 1990). Thus, we must consider whether a civil forfeiture action fits within the § 362(b)(4) exception to the automatic stay provision.
In In re Ryan, 15 B.R. 514 (D.Md.1981), the bankruptcy court decided that seized currency is included in the bankrupt’s estate and that any state forfeiture action is stayed under the Bankruptcy Code. The court reasoned that a forfeiture proceeding is not within the section 362(b)(4) exception for “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.” Id. at 519. It based this decision on two factors: First, the section 362(b)(4) exception is a limited exception applicable only to actions against the debtor stayed under section 362(a)(1), and not to actions against the property of the debtor or the estate stayed under other subsections of section 362(a). A forfeiture action is in some respects an action against property. Id. Second, the court reasoned that a forfeiture proceeding is not the type of governmental action contemplated by section 362(b)(4). This subsection “ ‘is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and not to apply to actions by a governmental unit to protect a pecuniary interest in property or property of the estate.’ ” Id. (quoting 124 Cong.Rec. Hll,092 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards)).
The Maryland bankruptcy court was of the view that Congress intended the exception to encompass only governmental action against the Debtor necessary to “ ‘prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws.’ ” Id. (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in U.S.Code Cong. & Admin.News 5787, 6299). Therefore, it determined that a forfeiture proceeding is not a governmental action seek *51 ing to vindicate or secure the public welfare, and that section 362(b)(4) did not apply. Id.
We do not agree. We believe that the decision in Ryan ignores the plain language of the statute. Section 362(b)(4) does not state that only a governmental action seeking to vindicate or secure the public welfare in enumerated actions is to be excepted from the automatic stay; rather it grants an exception for “the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.” A civil forfeiture action is an action by a governmental unit to enforce its police or regulatory power to combat the problem of illicit drugs. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 686-87, 94 S.Ct. 2080, 2093-94, 40 L.Ed.2d 452 (1974); State of N.J. v. 1979 Pontiac Trans Am, Color Grey, 98 N.J. 474, 480, 487 A.2d 722, 725 (1985). Therefore, we conclude that the district court here was correct in holding that a civil forfeiture action proceeding is an exception to the automatic stay under the “police power” exception of section 362(b)(4).[1]
VIII.
Having made this preliminary determination, we must now decide whether any federal court, short of the Supreme Court, had the power to examine the merits of this state forfeiture proceeding. We begin our analysis with a review of the teachings that control this sensitive area of federal-state comity.
Although the Anti-Injunction Act, 28 U.S.C. § 2283, generally prevents a federal court from enjoining state court proceedings, section 105(a) of the Bankruptcy Code creates an exception to this general statutory rule by authorizing a bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Act. Therefore, a bankruptcy court generally is considered to possess the power to enjoin a pending state action that violates the automatic stay.
This authorization is not without limits, however, given the overriding need for comity between state and federal courts. In Hill v. Harding, 107 U.S. 631, 633, 2 S.Ct. 404, 406, 27 L.Ed. 493 (1883), the Court explained the distinction between a stay of court proceedings and vacating a state court judgment. It determined that a bankruptcy court has the power to stay proceedings in state court, but did not determine that the court possessed any power to vacate its judgments. It reasoned that a stay of a suit pending in another court against the bankrupt is neither a dismissal of a suit nor a deprivation of jurisdiction over the matter; it is merely a suspension of the proceedings. Id. at 633-34, 2 S.Ct. at 406-07. Should the state court refuse to obey the stay, the proper recourse is through the state court system and then by writ of certiorari to the United States Supreme Court. Id. The vitality of this doctrine was reaffirmed by the Court as recently as 1983. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983).
In Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d 267 (3d Cir.1984), we articulated the test for when section 362 should be construed to override state law:
At its core, interpretation of section 362 involves questions of federal supremacy and pre-emption_
While Congress, under its Bankruptcy power, certainly has the constitutional prerogative to pre-empt the States, even in their exercise of police power, the usual rule is that congressional intent to pre-empt will not be inferred lightly. Pre-emption must either be explicit, or *52 compelled due to an unavoidable conflict between the state law and the federal law. Consideration of whether a state provision violated the supremacy clause starts with the basic assumption that Congress did not intend to displace state law.
Proper respect, therefore, for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended. Statutes should therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary. Where the traditional police power of the State is to “be deemed withdrawn by Congress in bankruptcy legislation, evidence of that withdrawal in fit language should be found within the act.”
733 F.2d at 272-73 (quoting In re Chicago Transit Co., 129 F.2d 1, 5 (7th Cir.), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942)) (citations omitted). We further stated:
The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States. Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession.
Id. at 273 (citations omitted).
A.
It is clear that in this case the district court questioned the merits of the state court proceedings after deciding that the police power exception was applicable. However, once validly entered in a court of competent jurisdiction, a judgment is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court’s system.
There appears to be only one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void ab initio. Kalb, 308 U.S. at 438-40, 60 S.Ct. at 345-47. A federal bankruptcy court may intervene only when the state proceedings are void ab initio; it lacks the power where it simply disagrees with the result obtained in an otherwise valid proceeding.
The distinction between a void judgment and one that is erroneously decided is crucial:
A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed.
Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir.1972) (footnote omitted), cited with approval in Marshall v. Board of Educ., Bergenfield, New Jersey, 575 F.2d 417, 422 n. 19 (3d Cir.1978).
In the case before us, the district court premised its decision to vacate the state court judgment on its perception that the state court judgment was erroneously decided on the merits, not that the state court lacked jurisdiction over the subject matter or parties. Such federal collateral review of a state proceeding is inappropriate.
B.
It bears emphasis to repeat that federal courts that are classed as “inferior” under Article III have the power to vacate only state court judgments that are considered void ab initio. Sound jurisprudential reasons underlie this concept. Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests. The case of Gonzales v. Parks, 830 F.2d 1033 (9th Cir.1987), exemplifies' this concept. There, secured creditors had filed an action in a state court alleging that *53 the debtor’s bankruptcy filing was an abuse of process. The state court entered a judgment against the debtors, who then moved the bankruptcy court to vacate the judgment. Affirming the decision of the bankruptcy court that declared the state court judgment void, the court of appeals held that federal bankruptcy courts have exclusive jurisdiction over bankruptcy cases and that this jurisdiction precludes collateral attacks on bankruptcy petitions in state court. Remedies for abusive filings may be pursued only in the federal courts. Id. at 1035-36. Therefore, the Ninth Circuit Court of Appeals affirmed the bankruptcy court’s decision to vacate the state court judgment. Id. at 1036-37.
The facts in Gonzales distinguish it from the case at bar. The court there did not examine the merits of the state court ease, as did the federal court here; rather it examined the jurisdictional underpinnings of the state court action, and finding it lacking, held the state court judgment to be void.
The Supreme Court has given us direct instruction explaining the profound limitation to our powers in the sensitive relationship between courts of separate sovereigns. In District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476,103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983), the Court made it clear that federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on the merits. Any such federal review must be addressed directly to the United States Supreme Court from the state’s highest court pursuant to 28 U.S.C. § 1257. See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng’rs, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); Facio v. Jones, 929 F.2d 541, 543 (10th Cir.1991) (district court had no jurisdictional power to set aside state default judgment); In re Marler, 58 B.R. 481, 483-84 (D.Kan.1986).
Accordingly, we hold that in this case, any relief from the state judgment on the merits, on the basis of the factual underpinnings, must be accorded by the New Jersey state court which has jurisdiction to hear such matters. We hold that both the bankruptcy court and the district court lacked the power to consider the merits of the state forfeiture proceeding.
IX.
This, too, must be said. At the time the funds were seized, the individuals involved made conflicting statements as to ownership. There was some evidence that police dogs treated the cash as possibly tainted by narcotics. The State subsequently determined that the property was prima facie contraband under N.J.Stat.Ann. § 2C:64-1, et seq., and commenced a timely civil forfeiture action in the Superior Court of New Jersey. The state court system was open for New Jersey to proceed in this fashion and it had the right to proceed in its own court system. That state’s court system had jurisdiction to hear the case under a valid state law promulgated by its legislature. By no stretch of the imagination may it be said that the state proceedings were void ab initio. Moreover, no independent federal jurisdiction to hear the state law civil forfeiture action ever existed. We hold, therefore, that the bankruptcy court and the district court improperly assumed appellate review over the state court judgment.
Whatever limitations the Debtor and her Trustee had in the federal forum, they were not devoid of judicial relief. They could have acted either to prevent the state court default judgment or to appeal the judgment in the state court system after it had been entered. The protections of the Bankruptcy Act were not designed to provide belated litigation strategy or refuge for ineffective prior counsel. The Debtor should not be rewarded for sitting on her rights and expecting the filing of a Chapter 7 petition to shield her. In carving out the section 362(b)(4) exception, Congress intended to combat the risk that defendants could “frustrate necessary governmental functions” by seeking refuge in bankrupt *54 cy court. United States v. Nicolet, Inc., 857 F.2d 202, 207 (3d Cir.1988).
X.
The judgment of the district court affirming the order of the bankruptcy court will be reversed with a direction that the proceedings be remanded to the bankruptcy court with a further direction to reverse its order that vacated the New Jersey state court judgment, all in accordance with the foregoing.

. Appellee has not contended that allowing New Jersey’s forfeiture judgment to stand would constitute the enforcement of a money judgment obtained in a police/regulatory power action in violation of the Congressional intent reflected in § 362(b)(4) and (5). See Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3d Cir.1987). See also 11 U.S.C. § 726(a)(4) (forfeiture claims take fourth distribution priority); id. § 523(a)(7) (forfeiture claims payable to a governmental unit are not discharged in bankruptcy).