IN THE MATTER OF
D. J. M.

Superior Court of New Jersey
Appellate Division

Argued March 6, 1978—Decided March 27, 1978.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. John J. Ensminger* argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Advocate, attorney; *Messrs. Edgar Devine* and *Michael L. Perlin,* of counsel and on the brief).

*Mr. Neil G. Markowitz* argued the cause for respondent Essex County Hospital Center (*Mr. Peter G. Stewart,* Essex County Counsel, attorney).

The opinion of the court was delivered by
HORN, J. A. D. ■ The single issue raised in this appeal is whether, in a routine review of the civil commitment

of a mental patient, that patient, acting through the Public Advocate, may inject into the proceedings, without notice, the question of the quality of the medical care that he is receiving in the public institution to which he is confined.

The trial judge held that he could not do so. We agree and affirm.

The so-called routine or periodic review of such cases is now undertaken under *R.* 4:74–7(e) and (f). These subsections, as paraphrased to delete irrelevant material, provide:

(e) Hearing. No permanent commitment order shall be entered except upon hearing conducted in accordance with provisions of these rules. \* \* \* The patient shall be required to appear at the hearing, but may be excused from the courtroom during all or any portion of the testimony upon application for good cause shown. Good cause shall include testimony by the psychiatrist that the mental condition of the patient would be adversely affected by the patient hearing his candid and complete testimony. The patient shall have the right to testify in his own behalf but need not. The hearing shall be held in camera unless good cause to the contrary is shown. The applicant for the commitment may appear either by counsel retained by him or by the county adjuster. In no case shall the patient appear pro se.

(f) Final Judgment of Commitment, Review. The court shall enter a judgment of commitment to an appropriate institution if it finds from the evidence presented at the hearing that the institutionalization of the patient is required by reason of his being a danger to himself or the community if he is not so confined and treated or, alternatively, if the patient is a minor and the court finds that he is in need of intensive psychiatric therapy which cannot practically or feasibly be rendered in the home or in the community or on any outpatient basis. If the patient is an adult, the judgment shall provide for review of the commitment no later than (1) three months from the date of judgment, and (2) on or before six months from the date of judgment, and (3) on or before one year from the date of the judgment, and (4) at least annually thereafter, if the patient is not sooner discharged. \* \* \* All reviews shall be conducted in the manner required by paragraph (e) of this rule \* \* \*.

In the instant case the patient, D. J. M., was 27 years of age on the date of the hearing, September 15, 1977. The patient had been admitted to the Essex County Hospital Cen-

ter in Cedar Grove in April 1970 and was discharged in March 1972. Subsequently he was admitted in August 1972 and was discharged in November 1974. His current confinement commenced in March 1975.

At the review hearing, which was routinely scheduled at the hospital along with approximately 39 other cases, the attorney for the county questioned a staff psychiatrist as to his observations of the patient; the latter's activities and behavior, and the necessity for his remaining in the institution. The attorney also elicited the doctor's prognosis. The deputy public advocate then cross-examined the doctor, predominantly on the type of treatment that the patient was receiving and whether the ward in which the patient was confined was therapeutic. He then offered the testimony of two medical experts as to the treatment being administered to the patient.

At the judge's request the deputy public advocate made a proffer of the purpose of the proposed expert testimony. As stated, it was "to establish that [the patient] is not receiving adequate medical treatment in this hospital. That * * * the patient would specifically request that three or four different measures be taken, and be ordered by the court."

█ At the outset, it should be stated that there is no dispute by the county that involuntarily committed mental patients are entitled to receive medical treatment in accordance wih accepted medical standards. *N. J. S. A.* 30:4–24.1 provides, in part, that "[e]very individual who is mentally ill shall be entitled to fundamental civil rights and to medical care and other professional services in accordance with accepted standards * * *." In addition, the right to treatment of a person committed to a mental institution has received attention in a number of recent cases, all firmly supporting the existence of such a right. *State v. Krol,* 68 *N. J.* 236, 262 (1975); *State v. Carter,* 64 *N. J.* 392, 393–394 (1974); *In re D. D.,* 118 *N. J. Super.* 1, 6 (App. Div. 1971); *State in Interest of R. G. W.,* 145 *N. J. Super.* 167,

179 (J. & D. R. Ct. 1976); *In re Application of J. C. G.,* 144 *N. J. Super.* 579, 587 (Cty. Ct. 1976).

Periodic review of involuntarily committed mental patients was initiated on a mandatory basis in November 1974 (see *Pressler, Current N. J. Court Rules,* Comment to *R.* 4:74–7[f]) when Chief Justice Hughes notified all assignment judges, trial court administrators and county clerks that:

It shall be the responsibility of the Assignment Judge to supervise the periodic review of all persons who are now, or may hereafter become, involuntarily committed in their vicinage * * *.

A time schedule for such review was outlined and it was further directed that "it shall remain within the court's discretion whether to accomplish the review summarily or by means of a plenary hearing; however, if specifically requested, a hearing shall be scheduled."

Effective September 13, 1976, *R.* 4:74–7 was amended to comprehend the policy reflected in the 1974 directive of the Chief Justice. The nature of the review proceeding was not articulated in the amended rule except as set forth in subparagraph (e) of the rule.

It is plain that a review proceeding pursuant to *R.* 4:74–7 is for a single purpose, *i. e.,* review of the patient's condition in order to determine whether he is entitled to be or should be discharged. The rule does not contemplate that other issues are to be determined and the present procedures, whereby a judge conducts the reviews in the institutions where the patients are confined in order to effect the least disruption of the daily operations of the institutions as well as activities and treatment of the patients, confirm the lack of intention or contemplation that such review hearings are, at least without notice, appropriate vehicles for the determination of other issues.

The general rule that it is assumed that public officials are properly performing their respective functions is applicable. *Levin v. Bridgewater Tp. Comm.,* 57 *N. J.*

506, 537 (1971), app. den. 404 *U. S.* 803, 92 *S. Ct.* 58, 30 *L. Ed.* 2d 35 (1971); *Edelstein v. Asbury Park,* 51 *N. J. Super.* 368, 389 (App. Div. 1958). It is therefore incumbent upon a patient who himself or through his representative claims otherwise to initiate such action as will be appropriate for the purpose of notifying the court of the issues, so that the matter may be appropriately scheduled, and also of notifying those who may be called upon to discharge their duties to the patient so that they may be given an opportunity to prepare for the proceeding and to appear and be heard.[1]

We need not be overly concerned with the question of whether an action in lieu of prerogative writs must be filed for the purpose of bringing the issue to a hearing or whether the matter should be heard at a review hearing on notice of the added issue. Which proceeding may be best suited can be determined on a case-by-case basis. There may be benefits in conducting a hearing combining the ordinary review and the question of adequate treatment. To some degree the issues are intertwined. In any event, we are not called upon to resolve that question of procedure on this appeal. We can only determine, as we have, that the trial judge correctly refused the proffered testimony.

Affirmed.

---

[1] If funding is involved, the officials charged with overseeing it should be notified.