LOCAL BOARD OF HEALTH OF THE TOWNSHIP OF BORDEN-TOWN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF BORDENTOWN, LOCAL BOARD OF HEALTH OF THE CITY OF BORDENTOWN, BOARD OF CITY COMMISSIONERS OF THE CITY OF BORDENTOWN, AND BOARD OF EDUCATION OF BORDENTOWN REGIONAL SCHOOL DISTRICT, PLAINTIFFS, v. INTERSTATE WASTE REMOVAL CO., INC., SCA SERVICES, INC., DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, AND ROBERT E. HUGHEY, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

July 22, 1983.

132

*Henry Tutek* and *David Gladfelter* for Plaintiffs (*Kessler, Tutek, Futey & Gladfelter,* Attorneys).

*Susan J. Vercheak,* Deputy Attorney General for State of New Jersey, Department of Environmental Protection (*Irwin I. Kimmelman,* Attorney General of New Jersey).

*Theodore A. Schwartz* for Interstate Waste Removal Co. and SCA Services, Inc. (*Schwartz, Tobia & Stanziale,* Attorneys).

HAINES, A.J.S.C.

The local boards of health, the governing bodies of two municipalities and a regional board of education have sued Interstate Waste Removal Co., Inc. and its parent company, SCA Services, Inc. (collectively, "Interstate"), the Department of Environmental Protection and its Commissioner. Interstate operates a large landfill, known as "Parklands," for the disposition of solid wastes. It is subject to the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 et seq. ("Act").

Plaintiffs charge Interstate with 51 violations of the act for which they seek to have penalties imposed at the maximum of $25,000 per day. Violations are said to consist of failure to cover the landfill area, permitting offensive odors to escape from the site, exceeding working face limits, operating without the submission of permeability tests and various related offenses. Information concerning these claims was obtained by plaintiffs from inspection reports and other data compiled by the Department of Environmental Protection ("DEP") or ("Department"). The DEP has served Interstate with notices of prosecution and administrative orders, charging a number of the violations listed in plaintiffs' complaint for which penalties are set forth. However, until now, no action has been commenced to enforce the collection of such penalties.

The Department and its Commissioner are named as defendants in two counts of the complaint, one seeking an order compelling them to pursue Interstate with respect to the 51 violations and the other requiring their future enforcement of the provisions of the Act, as well as regulations adopted thereunder, against the landfill operators. In response, the Department has filed a crossclaim against Interstate, duplicating the plaintiffs' suit for penalties as to most but not all of the 51 violations asserted and adding additional claims.

Interstate, DEP and the Commissioner move to dismiss the complaint against them. The numerous issues raised, many of first impression, may be resolved on the pleadings.

## I.  JURISDICTION

The Solid Waste Management Act provides the Department with power "to supervise solid waste collection and disposal facilities or operations," *N.J.S.A.* 13:1E–4 a, and to adopt codes, rules and regulations concerning such facilities and operations, *N.J.S.A.* 13:1E–6 a(2). The enforcement provisions of the act, contained in *N.J.S.A.* 13:1E–9 a, provide that the codes, rules and regulations "shall have the force and effect of law" and "shall be enforced by the Department and by every local board of health or county health department. . . ." Section 9 c provides:

> Any person who violates the provisions of this Act or any code, rule or regulation promulgated pursuant to this Act, shall be liable to a penalty of not more than $25,000 per day to be collected in a civil action commenced by a local board of health, a county health department, or the commissioner by a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58–1 et seq.) in the Superior Court, county district court or a municipal court, all of which have jurisdiction to enforce said Penalty Enforcement Law in connection with this Act. If the violation is of a continuing nature, each day during which it continues after the date given by which the violation must be eliminated in accordance with the order of the department shall constitute an additional, separate and distinct offense.

The Penalty Enforcement Law, *N.J.S.A.* 2A:58–1, provides that such penalties may be "collected or enforced by summary proceedings . . . pursuant to this chapter and the rules of the Supreme Court." Jurisdiction is conferred upon any court designated by the statute authorizing the penalty, and, therefore, in the present case, upon the Superior Court. Penalties assessed are to be paid into court and remitted to the State Treasurer. *N.J.S.A.* 2A:58–8.

Notwithstanding these statutory provisions, Interstate contends that concepts of primary jurisdiction require the claims of plaintiffs to be determined, at least initially, by DEP.

Primary jurisdiction is the main doctrine that is used for withholding judicial power in order to make a place for the agency; a court refrains from initial performance of *tasks* that the legislative body has assigned to the agency. [emphasis added] 4 *Davis, Administrative Law Treatise,* § 22:1 at 82 (2d Ed.1983).

. . . .

"Primary jurisdiction" . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires *the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body* . . . . *Woodside Homes v. Morristown,* 26 *N.J.* 529, 541 (1958), quoting from Justice Harlan's opinion in *U.S. v. Western Pac. R. Co.,* 352 *U.S.* 59, 63–64, 77 *S.Ct.* 161, 165, 1 *L.Ed.*2d 126 (1956) [emphasis added].

The reasons for courts' deference to agencies under this doctrine are set forth in *U.S. v. Western Pac. R. Co.,* quoting from *Far East Conference v. United States,* 342 *U.S.* 570, 72 *S.Ct.* 492, 96 *L.Ed.* 576:

Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. [352 *U.S.* at 64–65, 71 *S.Ct.* at 165]

■ These principles, applied here, deny Interstate's jurisdictional claims. The present proceedings are designed to enforce the *collection* of penalties; they have *not* been entrusted to the DEP by the Legislature. The DEP has no power to *enforce* such collections except by suit in the Superior Court. *N.J.S.A.* 13:1E–9 c. In addition, concerns about the DEP's "special competence" and the development of regulatory consistency, are not present. The questions before this court are: (1) Did Interstate violate the Act or any regulation promulgated thereunder? (2) If so, should penalties be assessed and in what amount? These are not questions requiring agency expertise. They do not raise problems of consistency. Finally, any jurisdiction argument is demolished by the fact that the Department itself, through its cross-claim, has chosen the jurisdiction of this court for penalty enforcement purposes. It makes no claim of primary jurisdiction.

■ Interstate's related claim, that it is entitled to a preliminary DEP administrative hearing is not well founded. The argument is based upon *N.J.A.C.* 7:26–5.4 which authorizes certain administrative hearings. Such hearings, however, are confined to those mandated by the Solid Waste Management Act, to denials of penalty rebates and to three issues concerning registration applications. The Act does not provide for administrative hearings concerning the *collection* of penalties. Under principles of due process, Interstate, of course, is entitled to a hearing on the collection issues. It will receive that hearing in this court where the burden is upon plaintiffs and the Department to establish the claimed violations by a preponderance of the evidence. *Dept. of Cons. and Eco. Dev. v. Scipio,* 88 *N.J.Super.* 315 (App.Div.1965), *certif. den.,* 45 *N.J.* 598 (1965).

■ The 51 violations charged to Interstate have been the object of varied DEP proceedings. Interstate argues that these proceedings must run their course before this court may entertain the instant suit. Some violations have been the subject of a corrective odor plan submitted to and approved by the DEP. Some have been the object of notices of prosecution and administrative orders. Others have been disclosed by DEP inspections but have not been pursued in administrative proceedings. In all of these cases, the actions taken by DEP do not affect the demand that penalties be assessed. The fact, for example, that Interstate has developed a plan to correct odor violations does not eliminate its liability for the payment of a .penalty for violations which occurred *before* the plan's submission was required by a DEP order. The Act does not provide that corrective action concerning future violations requires forgiveness of ones past.

The Act, reasonably interpreted, authorizes the Department to assess penalties (although it is not specific in this respect) against violators without resorting to a formal court proceeding. Section 9 c makes violators "liable to a penalty of not more than $25,000 per day...." Section 9 d provides the Department

with discretionary authority "to compromise and settle any claim for a penalty under this section . . . ." *N.J.A.C.* 7:26–5.-5(c) states that "[n]otification of compromises and offers of settlement shall be made by the Department in writing via a "Notice of Prosecution . . . ." *N.J.A.C.* 7:26–5.6(a) provides that "[t]he Department may, upon request of a person aggrieved by an order, decision or action of the Department, agree to the negotiation of a stipulation and order derived by mutual consent in lieu of adversary proceedings. . . ." These administrative practice rules, representing the Department's interpretation of the statutory provisions, assume its ability to assess such penalties. That interpretation relating to penalties is entitled to "great weight". *In re Application of Saddle River,* 71 *N.J.* 14, 24 (1976). It is also a logical and practical interpretation. Unnecessary litigation should be avoided. It is only when penalties cannot be collected by negotiation that the assistance of the courts should be sought, although the Department may choose that route at any time.

Some of the penalty claims asserted in this suit have been settled by the DEP after the filing of the complaint and cross-claim. Authority for that action is found in *N.J.S.A.* 13:1E–9 d:

> The department is hereby authorized and empowered to compromise and settle any claim for a penalty under this section in such amount in the discretion of the department as may appear appropriate and equitable under all of the circumstances, including a rebate of any such penalty paid up to 90% thereof where such person satisfies the department within 1 year or such other period as the department may deem reasonable that such violation has been eliminated or removed or that such order or injunction has been met or satisfied, as the case may be.

The fact that settlement occurred after the jurisdiction of this court had been invoked is not material. The statute provides the DEP with the right to exercise its settlement authority at any time.

## II. SUMMARY PROCEEDINGS

The Solid Waste Management Act and the Penalty Enforcement Law both authorize the collection of penalties in a

"summary proceeding." Interstate nevertheless claims the right to discovery.

*R.* 4:67–2(b), applying to summary actions, permits discovery. Actions for the recovery of penalties are expressly excluded from the operation of that Rule, which requires them to be brought pursuant to *R.* 4:70. That latter Rule provides for a summary hearing "without the filing of any pleadings except the complaint." *R.* 4:70–4(b). It does not provide for discovery, a provision which would be contrary to the obvious intent of the Rules and the statutes. In the present case, no discovery will be allowed as to the counts of the complaint and cross-claim relating to penalty enforcement.

### III. STANDING

Interstate argues that the only plaintiff with standing to bring this action is the local board of health of the Township of Bordentown in which Parklands is situated. I agree that neither of the two governing bodies nor the Regional Board of Education has standing; *N.J.S.A.* 13:1E–9 c authorizes this action only "by a local board of health, a county health department, or the commissioner" [emphasis supplied]. The only question therefore is whether the local board of health of the City of Bordentown has standing. I conclude that it does. The Act does not limit its authority for the commencement of this proceeding to any particular local board of health. *N.J.S.A.* 13:1E–9 a provides in part that "the municipal attorney or an attorney retained by a municipality in which a violation of such laws or rules and regulations adopted pursuant thereto is alleged to have occurred shall act as counsel to a local board of health." It is suggested that this limits standing to the board of the municipality in which the solid waste facility is located. In the present case, alleged violations occurred in the City of Bordentown, *e.g.,* odors produced by the landfill offended City residents. Thus, a violation occurred in the City and its local board of health has standing to commence this suit.

## IV. THE EFFECT OF THE PROSECUTION OF CLAIMS BY THE LOCAL BOARDS OF HEALTH AND THE DEP SIMULTANEOUSLY

■ The Act permits a local board of health *"or"* the Commissioner to bring a suit for the collection of penalties. *N.J.S.A.* 13:1E–9 c. Thus, either may sue, but not both. "The words 'or' and 'and' are ofttimes used interchangeably, and the determination of whether the word 'and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent." *Howard v. Harwood's Restaurant Co.,* 25 *N.J.* 72, 88 (1957). Here, the Legislature must have used "or" in the disjunctive sense. To hold otherwise would permit simultaneous actions involving identical claims, raising unnecessary questions concerning authority over the litigation, its conduct and its possible settlement. Those questions have been raised here.

The Department, responding to the plaintiffs' demand, has filed a cross-claim seeking to enforce the collection of penalties. It addresses most of the violations asserted in the complaint. As to these, the Department now controls the litigation, ousting the local boards of authority. The boards, however, may continue to litigate those penalty demands not included in the cross-claim.

## V. LACHES AND ESTOPPEL

The incidents involved in this suit occurred between April 2, 1981 and March 15, 1983. Interstate argues that numerous claims are barred by principles of laches and estoppel. Both terms are defined in *West Jersey Title Co. v. Industrial Trust Co.,* 27 *N.J.* 144 (1958):

> Estoppel *in pais* is a preclusion by law against speaking contrary to one's own act or deed; one may not take a position inconsistent with that previously assumed and intended to influence the conduct of another, if such repudiation "would not be responsive to the demands of justice and good conscience," in that it would work prejudice and injury to others. (citation omitted) [at 153].

. . . .

. . . [L]aches involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party.

Estoppel may be applied against public bodies "where the interests of justice, morality and common fairness clearly dictate that course." *Gruber v. Raritan Twp.*, 39 *N.J.* 1, 13 (1962).

Interstate claims that it has lost witnesses by reason of employee changes and can no longer fairly meet the substance of some charges. The absence of important witnesses for the defense has been held to bar a claim on the basis of laches. *In re Koehler*, 43 *N.J.Super.* 585, 594–595 (App.Div.1957). Here, the claimed prejudice resulting from delay in prosecution has not been shown by the proofs presented, nor is it clear that the delay was not the fault of Interstate. Its motion must be denied, without prejudice to its right to raise the issue at trial.

## VI. THE ODOR REGULATION

Interstate contends that the regulation upon which the claimed odor violations rest is unconstitutionally vague and therefore unenforceable. The regulation appears in *N.J.A.C.* 7:26–2.5(h) which states:

The operation of a solid waste facility shall not result in odors associated with solid waste being detected off-site by sense of smell in any area of human use or occupancy.

It is true that "[a] statute is unconstitutional if it is couched in terms 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application'." [citation omitted] *State v. Lashinsky*, 81 *N.J.* 1, 17–18 (1979). However, the regulation here does not violate that principle. The rule is laid down in *State v. New York Central R. Co.*, 37 *N.J.Super.* 42 (App.Div.1955) in a case upholding a municipal ordinance prohibiting "loud and unnecessary noise":

Where the legislative regulatory object is appropriate and the conduct intended to be prohibited is not fairly susceptible to definition in other than general language, there is no constitutional impediment to its use. [citation omitted].

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls, is not a sufficient reason to hold the language too ambiguous to define a penal offense. [citation omitted] No more than a reasonable degree of certainty can be demanded. [at 48].

Here, the reference to "odors associated with solid waste" and their detection off-site by a sense of smell are sufficient to convey the prohibition. The language is not so vague as to deny notice of its meaning.

This conclusion, however, is not for this court to reach. It has no jurisdiction. A challenge to the validity of an administrative regulation must be made in the Appellate Division. *R.* 2:2–3.

## VII.  OTHER DEFENSES OF INTERSTATE

Interstate raises other issues, namely, that (1) the verification of the complaint is not in compliance with *R.* 4:70;  (2) the complaint is not sufficiently specific;  and (3) a board of health suit may not be based on DEP inspections.  These arguments have no merit;  they are patently frivolous.

## VIII.  THE DEPARTMENT'S MOTION TO DISMISS

The Department moves to dismiss those counts of the complaint which seek an order requiring it to prosecute the asserted violations and to enforce the Solid Waste Management Act against Interstate.  It argues that the requested relief would invoke administrative discretion which may not be the subject of a court order.  Plaintiffs' action is in lieu of the prerogative writ of mandamus, as to which relief is "available only where there is a clear and definite right to the performance of a ministerial duty in essence mandatory and final and wholly free of the element of discretion or to direct without controlling the exercise of a discretionary authority." *Gallena v. Scott,* 11 *N.J.* 231, 238 (1953).

Plaintiffs' demand for an order requiring the Department to enforce the law in the future is not supportable legally. The Department is a State agency which has been directed by

the Legislature to enforce the law. It is to be presumed that the Department will carry out its responsibilities with respect to future solid waste problems and violations. *In re D.J.M.*, 158 *N.J.Super.* 497, 501 (App.Div.1978) (". . . it is presumed that public officials are performing their functions . . . .") Any other supposition would be based upon pure speculation. These circumstances deny the right to an injunction.

> To authorize an injunction, the court must be reasonably satisfied that the threatened harm is likely to be committed and that defendant intends to perpetrate the act sought to be enjoined, or that the act probably will be done unless the court prevents it. An injunction will not issue to prohibit the doing of acts already done, and merely to allay a plaintiff's fears or apprehension, where there is nothing to show that the wrongs complained of are likely to be continued unless restrained. (citations omitted) *N.J. State AFL–CIO v. State Fed. of Dis. Bd. of Ed.*, 93 *N.J.Super.* 31, 43 (Ch.1966).

An anticipated injury must be "reasonably apprehended" before a restraining order may issue. *Sheahan v. Upper Greenwood Lake*, 36 *N.J.Super.* 133, 136 (App.Div.1955). There is no reasonable apprehension that the DEP will not perform its statutory duties. This count of the complaint must therefore be dismissed.

The demand for an order requiring the Department to pursue known violations requires a different analysis. When a State agency is charged with ministerial duties which it is not performing, an action to compel performance will lie. *Delaney v. Penza*, 151 *N.J.Super.* 455, 458–459 (App.Div.1977). In *Equitable Life v. N.J. Div. of Tax.*, 151 *N.J.Super.* 232 (App.Div. 1977), the court said:

> We are aware that the complaint here may be construable not only as challenging action taken by the Division but also as challenging its inaction, that is, its failure to promulgate a general rule interpreting the subject section of the Tax Act. We are further aware that where inaction by a State agency is challenged, an action in the Law Division rather than review by this court may be appropriate, but only if the inaction complained of is the non-performance of mandated ministerial obligations. [at 238].

See also, *Colon v. Tedesco*, 125 *N.J.Super.* 446 (Law Div.1973). In *Switz v. Middletown Twp.*, 40 *N.J.Super.* 217 (App.Div.1956), *Mod. on other grounds*, 23 *N.J.* 580 (1957), the court compelled a tax assessor to assess local real property at true value. The

making of an assessment based on true value was seen as a legislative mandate. The method used to make assessments was seen as discretionary. In *Woodbridge State School Parents Assoc. v. AFSCME,* 180 *N.J.Super.* 501 (Ch.Div.1981), the court held that mandamus will lie to compel a State agency to sue to enforce duties owed to the agency by third parties.

The term "ministerial" has been construed in *Case v. Daniel C. McGuire, Inc.,* 53 *N.J.Super.* 494 (Ch.Div.1959):

> ... [A]n official duty is "ministerial" when it is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion [at 498].

The Solid Waste Management Act, *N.J.S.A.* 13:1E–9 a, provides that the codes, rules and regulations adopted by the Department "*shall* be observed throughout the State and *shall be enforced* by the Department and by every local board of health or county health department, as the case may be". [emphasis added]. The word "shall" indicates a requirement of mandatory action "unless it is used merely to effectuate a provision relating to form and manner". *Murnick v. Asbury Park,* 187 *N.J.Super.* 455, 460 (App.Div.1982). See also, *Ervolini v. Camden City,* 127 *N.J.L.* 473 (Sup.Ct.1941). The enforcement of the regulations of the Department is not a matter relating to "form and manner".

On the basis of these principles, it is clear that the Department has an obligation to act upon known violations. Thus, this court should order the Department to take *some* action with respect to violations revealed by its own inspections, *e.g.,* to prosecute, to decide that prosecution is not warranted or to negotiate a settlement. This will carry out public expectations.

The Department *has* acted with respect to all violations listed in its cross-claim. Its filing of pleadings is a performance of its obligation to enforce the law. Further action on those violations is discretionary and beyond the control of this court. In *Equitable Life v. N.J. Div. of Tax., supra,* the court said:

> ... We are satisfied that review pursuant to R.2:2–3(a) is also the exclusive method of challenging action or non-ministerial inaction by a State agency ... [151 *N.J.Super.* at 238].

However, it has taken no action addressing additional violations set forth in the complaint. It may be required to do so, subject to an election to be made by plaintiffs. They may pursue the additional violations. If they do, their count seeking action as to them by the DEP must be dismissed because they will have assumed the obligation to act. If they do not, their penalty enforcement count must be dismissed and the DEP may be required to act with respect to the additional violations. The election must be made in writing and filed with this court within 10 days.

## CONCLUSION

Interstate's motion to dismiss must be denied. The Department's motion to dismiss must be granted unless the boards decide not to pursue the additional violations, in which case the motion, as to those violations only, must be denied. An appropriate order has been executed.