266 N.J. Super. 16 (1993)
628 A.2d 761
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF-RESPONDENT,
v.
LARCHMONT FARMS, INC. AND CHARLES HAINES, III, DEFENDANTS-APPELLANTS, AND ARMANDO GONZALES AND ANDRE URENO, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1993.
Decided July 7, 1993.
*18 Before Judges MICHELS, BILDER and BAIME.
Donald C. Simpson argued the cause for appellants (Simpson & Simpson, attorney; Mr. Simpson, of counsel and on the brief).
David Restaino argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mary C. Jacobson, Senior Deputy Attorney General, of counsel; Mr. Restaino, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants Larchmont Farms Inc. (Larchmont) and Charles Haines, III (Haines) appeal from an order of the Chancery Division that dismissed the complaint of plaintiff New Jersey Department of Environmental Protection and Energy (DEPE) alleging violations of the Pesticide Control Act of 1971 (Pesticide Act), N.J.S.A. 13:1F-1 to -18. The trial court dismissed the complaint without prejudice on the ground that the issues raised *19 were not ripe because the Office of Administrative Law had not held a hearing to determine whether there was underlying liability. In reaching this conclusion, the trial court explained:
It appears to the court that the action is premature because the Office of Administrative Law has not yet scheduled the hearing for determining the alleged violation of the Pesticide Control Act. A penalty enforcement action is not yet ripe. Since the enabling act quoted above gives the DEPE authority to hold hearings in connection with complaints it initiates, the DEPE was in error in refusing any administrative action as requested by defendants. However, it appears that its Division of Environmental Quality has initiated an administrative contest. If the enforcement is successful, then the Division or the DEPE can file an action here to collect the appropriate penalty.
The record on this appeal shows that Larchmont, a New Jersey based corporation engaged in the business of growing agricultural products, operated a peach orchard on Route 540 in Upper Deerfield, New Jersey. On June 28, 1989, DEPE inspectors Daniel Russell and Thomas Kosinski were conducting a routine inspection at the peach orchard when they observed the pesticide Parathion, which is classified as highly toxic, see 40 C.F.R. 156.10(h); N.J.A.C. 7:30-9.13(c) and (d), being applied to the crops in an unlawful manner. When the inspectors arrived at the farm, they noticed a fire truck that had been converted for use in pesticide application parked on the side of the road. Defendant Andre Ureno, a pesticide operator employed by Larchmont, was near this vehicle mixing Parathion in plastic milk and coke containers, without a respirator or safety goggles, in violation of N.J.A.C. 7:30-9.5(c) and N.J.A.C. 7:30-10.3(a). Ureno worked under the supervision of Haines, who was employed by Larchmont as a manager and a certified and registered private pesticide applicator.
The inspectors then observed a tractor engaged in pesticide application in the nearby orchard. The inspectors witnessed defendant Armando Gonzales, another Larchmont employee who was operating the tractor, exit from a row of peach trees approximately fifty yards west of where the inspectors were standing, and make a right turn to enter down the next row without turning off the spraying mechanism. Pesticide spray drifted from the tractor *20 onto both inspectors and their car. Laboratory testing on samples from the car and the inspectors' bare arms confirmed that they were sprayed with Parathion.
The inspectors signaled Gonzales to turn off the spray vehicle and approach them. Gonzales was observed climbing down from the tractor dressed in rubber bib overalls, long-sleeve shirt, boots and baseball cap, but he was not wearing a respirator, gloves or safety goggles as required by the Parathion label.[1] Gonzales, who spoke only Spanish, was not a certified, registered pesticide applicator.
A few months later in August 1989, the DEPE received complaints that Larchmont farm workers had been sprayed with pesticides while working. DEPE inspector Nancy Santiago went to Larchmont's farm to investigate. Santiago requested access to Larchmont's records to assess the validity of the claims, but was met with resistance by Haines. When allowed to view the records, Santiago discovered that crucial portions of the records, which were needed to substantiate the farm workers' claims, were missing. On November 13, 1989, Santiago requested the additional information, and subsequently repeated this request on November 20, 1989. Finally, on December 4, 1989, Santiago received the information from Haines.
On February 9, 1990, the DEPE issued Notices of Prosecution to Larchmont, Haines, Gonzales and Ureno, stating that investigations resulted in determinations that each was in violation of the *21 Pesticide Act, N.J.S.A. 13:1F-1 to 18, and offering settlement amounts. Larchmont and Gonzales were charged with using or applying Parathion 8E in a manner inconsistent with its Federal or State registered label by applying it in a manner exposing unprotected persons to drift, causing significant risk of injury to persons, property or the environment through drift, without taking reasonable precautions before, during and after application to minimize exposure and ensure the safety of individuals in violation of N.J.A.C. 7:30-10.3(a), (c) and (e). The DEPE offered Larchmont a settlement of $4,600 for these alleged violations. Gonzales was offered a settlement for $3,000.
Haines and Ureno were said to have used or applied Parathion 8E in a manner inconsistent with its Federal or State registered label by using it without required protective clothing and equipment in violation of N.J.A.C. 7:30-10.3(a). Haines was offered a settlement of $2,000 for this violation. Ureno was offered a settlement of $750. On September 25, 1990, Haines was issued a second Notice of Prosecution, charging him with failing to make records of pesticide applications available to DEPE personnel upon request in violation of N.J.A.C. 7:30-8.8(c). The DEPE offered Haines $500 to settle this claim.
Every Notice of Prosecution issued to defendants included the provision that:
If you fail to accept the Department's offer of settlement and/or fail to comply with the requirements of N.J.A.C. 7:30-1 et seq., the matter will be referred to the Attorney General with the recommendation to seek injunctive relief and maximum penalties for each violation as provided by law.
The settlement offers were never accepted by defendants.
On January 31, 1992, DEPE instituted this summary action in the Superior Court, Chancery Division alleging various violations of the Pesticide Act and seeking the imposition of statutory penalties pursuant to N.J.S.A. 13:1D-9(e), N.J.S.A. 13:1F-10 and N.J.S.A. 2A:58-1, and R. 4:67-6 & 4:70-1. Defendants moved to dismiss the complaint on the ground that it was barred by the two-year statute of limitations set forth in N.J.S.A. 2C:14-10 and that they were denied due process since they never had an *22 administrative hearing to establish the underlying liability for which penalties could be assessed. The trial court granted the motion on the ground that the action was not ripe for review and, because an administrative hearing had not yet been held, dismissed the complaint pursuant to R. 4:6-2. Defendants immediately moved to amend the order of dismissal pursuant to R. 1:7-4 and R. 4:49-2 to grant summary judgment on the ground that the complaint was barred by the statute of limitations, or alternatively, to dismiss the complaint with prejudice. The trial court denied the motion, reciting that "the argument concerning the period of limitations may be brought in the Office of Administrative Law." Larchmont and Haines appeal.
Although the trial court order challenged on this appeal is phrased in terms of a dismissal, the matter was effectively transferred to the DEPE for a hearing to determine whether the penalties should be imposed. Defendants contend that the trial court erred in this regard and should have exercised its jurisdiction and dismissed the complaint with prejudice on the grounds that the action is barred by the two-year statute of limitations. Thus, the threshold issue before this court is whether the trial court had jurisdiction to impose penalties for violations of the Pesticide Act, without an administrative hearing in the Office of Administrative Law.
The legislative purpose underlying the Pesticide Act is set forth in N.J.S.A. 13:1F-2, which, in pertinent part, reads:
New Jersey, as the most urban State in the Nation, must be especially alert to any possibilities of disturbing natural ecological balance. It is essential to coordinate the activities of State agencies involved in the use of pesticides and, in addition, to formulate State policies regulating the use, transportation, storage, sale and disposal of pesticides and their containers. This requires consideration of many factors, including long term effects on the environment, as well as the safety and effectiveness of pesticides.
The Legislature authorized the DEPE to inspect buildings and places for purposes of investigating for possible violations of the Pesticide Act, see N.J.S.A. 13:1F-9(c), and to:

*23 Receive or initiate complaints of violations of applicable laws, rules, regulations and orders relating to pesticides and institute legal proceedings for the prevention of such violations and for the recovery of penalties, in accordance with law. [N.J.S.A. 13:1F-9(d)].
The Legislature enacted N.J.S.A. 13:1F-10 specifically to address the procedure that the DEPE may follow to obtain either an injunction or payment of penalties in the event a violation of the Pesticide Act is uncovered. The full text of N.J.S.A. 13:1F-10 reads:
Violations; injunction; penalty
If any person violates any of the provisions of this act or any rule, regulation or order promulgated pursuant to the provisions of this act, the department may institute a civil action in a court of competent jurisdiction for injunctive relief to prohibit and prevent such violation or violations and the said court may proceed in the action in a summary manner.
Any person who violates the provisions of this act or any rule, regulation or order promulgated pursuant to this act shall be liable to a penalty of not more than $3,000.00 for each offense, to be collected in a civil action by a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.) or in any case before a court of competent jurisdiction wherein injunctive relief has been requested. The Superior Court shall have jurisdiction to enforce said Penalty Enforcement Law. If the violation is of a continuing nature, each day during which it continues shall constitute an additional, separate and distinct offense.
The department is hereby authorized and empowered to compromise and settle any claim for a penalty under this section in such amount in the discretion of the department as may appear appropriate and equitable under all of the circumstances. [N.J.S.A. 13:1F-10 (emphasis added)].
The second paragraph of this section specifically outlines the procedure to be followed by the DEPE in seeking penalties from those who violate the Pesticide Act. Its language suggests that the Superior Court is the first place the DEPE must go to pursue penalties and that the process to be followed is that which is set forth in N.J.S.A. 2A:58-1 to 9. N.J.S.A. 2A:58-1, which provides for summary proceedings for the collection of penalties, states:
Any penalty imposed by any statute heretofore or hereafter enacted, which by direction or authority of such statute may be collected or enforced by summary proceedings or in a summary manner may be collected and enforced in summary proceedings pursuant to this chapter and the rules of the supreme court.
*24 N.J.S.A. 2A:58-2 further provides that any court that has jurisdiction to impose the penalty also has jurisdiction to enforce it:
Every court upon which jurisdiction is conferred by the statute imposing the penalty, shall have jurisdiction of proceedings for the enforcement of any such penalty.
R. 4:70 is cross referenced in N.J.S.A. 2A:58-1 for guidance on the procedures for the collection of statutory penalties.[2]R. 4:70 is entitled "Summary Proceedings for Collection of Statutory Penalties" and provides, in part:
Any penalty imposed by any statute or ordinance which may be collected or enforced by a summary civil proceeding shall be collected and enforced pursuant to R. 4:70 in every court upon which jurisdiction is conferred by the statute imposing the penalty. This rule shall not, however, be applicable if a statute requires a civil penalty to be collected by a plenary action. [R. 4:70-1 (emphasis added)].
R. 4:70-4 specifically addresses the nature of the hearing that is allowed in a summary enforcement proceeding in Superior Court. R. 4:70-4(b) provides:
On the return of the process or at any time to which the trial has been adjourned, the court in which the proceedings were instituted shall summarily, without the filing of any pleadings except the complaint, hear the testimony and determine and give judgment in the matter, whether for the recovery of a money penalty or costs or both, or otherwise, or for the defendant. Unless otherwise provided in the statute imposing the penalty, such hearing shall be without a jury.
The complaint must be in writing and verified, describing:
(1) the person alleged to have violated the provision of statute for whose violation is imposed a penalty to be enforced in a summary manner; (2) the statute and provision thereof violated; and (3) the time, place and nature of such violation. If the proceeding is instituted by a governmental body or officer, the verification of the complaint may be made on information and belief by any person duly authorized to act on its or his behalf. [R. 4:70-2].
*25 Although there does not appear to be any reported decision directly on point, at least one New Jersey court has considered the issue of Superior Court jurisdiction in the context of a different, but somewhat analogous situation. In Bordentown Township Board of Health v. Interstate Waste, 191 N.J. Super. 128, 465 A.2d 587 (Law Div. 1983), Judge Haines addressed this issue in the context of the Solid Waste Management Act, N.J.S.A. 13:1E-1 to 207. In that case, defendant was charged with fifty one violations of the Solid Waste Management Act and was served with numerous notices of prosecution and administrative orders. The proceedings before the trial court were for the collection of penalties pursuant to N.J.S.A. 13:1E-9(c) and N.J.S.A. 2A:58-1.
N.J.S.A. 13:1E-9(c) of the Solid Waste Management Act is quite similar to N.J.S.A. 13:1F-10 of the Pesticide Act. At the time of the Bordentown decision, N.J.S.A. 13:1E-9(c) provided, in part:
Any person who violates the provisions of this Act or any code, rule or regulation promulgated pursuant to this Act, shall be liable to a penalty of not more than $25,000 per day to be collected in a civil action commenced by a local board of health, a county health department, or the commissioner by a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.) in the Superior Court, county district court or a municipal court, all of which have jurisdiction to enforce said Penalty Enforcement Law in connection with this Act. If the violation is of a continuing nature, each day during which it continues after the date given by which the violation must be eliminated in accordance with the order of the department shall constitute an additional, separate and distinct offense. [Bordentown Township Bd. of Health v. Interstate Waste, supra, 191 N.J. Super. at 134, 465 A.2d 587 (quoting N.J.S.A. 13:1E-9c, amended by L. 1987, c. 158, § 1 and L. 1990 c. 70, § 1)].
The defendant argued that concepts of primary jurisdiction required that the claims against it be determined initially by the DEPE. Judge Haines reflected on the reason for judicial deference to agency decisions under the "primary jurisdiction" doctrine:
Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. [Bordentown Township Bd. of Health v. Interstate Waste, supra, 191 N.J. Super. at 135, 465 A.2d 587 (quoting United States v. Western Pac. R.R. Co., 352 U.S. 59, 64-65, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956))].
*26 Judge Haines then found that the concerns underlying deference to initial agency review did not exist in this case, stating:
These principles, applied here, deny Interstate's jurisdictional claims. The present proceedings are designed to enforce the collection of penalties; they have not been entrusted to the DEP by the Legislature. The DEP has no power to enforce such collections except by suit in the Superior Court. N.J.S.A. 13:1E-9c. In addition, concerns about the DEP's "special competence" and the development of regulatory consistency, are not present. The questions before this court are: (1) Did Interstate violate the Act or any regulation promulgated thereunder? (2) If so, should penalties be assessed and in what amount? These are not questions requiring agency expertise. They do not raise problems of consistency. Finally, any jurisdiction argument is demolished by the fact that the Department itself, through its cross-claim, has chosen the jurisdiction of this court for penalty enforcement purposes. It makes no claim of primary jurisdiction.
Interstate's related claim, that it is entitled to a preliminary DEP administrative hearing is not well founded. The argument is based upon N.J.A.C. 7:26-5.4 which authorizes certain administrative hearings. Such hearings, however, are confined to those mandated by the Solid Waste Management Act, to denials of penalty rebates and to three issues concerning registration applications. The Act does not provide for administrative hearings concerning the collection of penalties. Under principles of due process, Interstate, of course, is entitled to a hearing on the collection issues. It will receive that hearing in this court where the burden is upon plaintiffs and the Department to establish the claimed violations by a preponderance of the evidence. Dept. of Cons. and Eco. Dev. v. Scipio, 88 N.J. Super. 315 [212 A.2d 184] (App.Div. 1965), certif. den., 45 N.J. 598 [214 A.2d 32] (1965). [Bordentown Township Bd. of Health v. Interstate Waste, supra, 191 N.J. Super. at 135-36, 465 A.2d 587].
Thus, although there had not been an administrative hearing to determine whether the violations had occurred, Judge Haines held that summary proceedings for penalty enforcement may be brought initially in the Superior Court, absent a statutory mandate to the contrary.
Most recently, in Middlesex County v. Browning Ferris, 252 N.J. Super. 134, 138, 599 A.2d 554 (App.Div. 1991), we addressed the issue of who has jurisdiction for enforcement of penalties under N.J.S.A. 13:1E-9c of the Solid Waste Management Act, the same provision at issue in Bordentown Township Board of Health v. Interstate Waste, supra, 191 N.J. Super. at 134, 465 A.2d 587. There, Middlesex County appealed the Law Division's ruling that the municipal court lacked jurisdiction to conduct plenary hearings under the statute. We held that the language of N.J.S.A. 13:1E-9c *27 provided for enforcement of penalties "through an action brought in a court as opposed to administrative penalties or injunctive or abatement type relief." Middlesex County v. Browning Ferris, supra, 252 N.J. Super. at 141, 599 A.2d 554 (emphasis added). Thus, we concluded that municipal courts are statutorily authorized to provide the "quick and simple" judicial relief of a summary procedure. The above quoted language suggests that the important distinction to make is between court proceedings versus administrative proceedings, rather than between the various types of court proceedings. It logically follows from this language that the involvement of an administrative body is neither intended nor necessary to pursue relief through summary proceedings in a court of competent jurisdiction under N.J.S.A. 13:1F-10 and N.J.S.A. 2A:58-1.
Thus, based on the language of the relevant statutes and decisions, the trial court erred in referring the matter to the Office of Administrative Law for an administrative hearing. The Pesticide Act specifically provides for summary proceedings in the Superior Court, see N.J.S.A. 13:1F-10, and there is no indication whatsoever that the Legislature intended the involvement of an administrative body in the adjudication of claims under the Pesticide Act.
This result is not altered by our decision in Community Affairs Department v. Wertheimer, 177 N.J. Super. 595, 427 A.2d 592 (App.Div. 1980), where we addressed the due process concerns surrounding the denial of an administrative hearing. In that case, the defendants, who were charged with twenty violations of the Hotel and Motel Dwelling Law, N.J.S.A. 55:13A-1 to 28, were assessed penalties and advised of their right to a hearing by timely request pursuant to N.J.S.A. 55:13A-18. The defendants delayed in requesting an administrative hearing, and were ultimately denied such because of the untimely request. We affirmed the denial of the hearing because due process requires only "adequate notice opportunity for a fair hearing and availability of appropriate review." Id. at 599, 427 A.2d 592; see also In re *28 Heller Suspension, 73 N.J. 292, 310-11, 374 A.2d 1191 (1977). We stated "[a]dvance notice of a tax or penalty assessment is not necessary so long as the subject is afforded an opportunity to present his defenses to a competent tribunal before it is collected or the order to pay becomes irrevocable." Community Affairs Department v. Wertheimer, supra, 177 N.J. Super. at 599, 427 A.2d 592; see Nickey v. Mississippi, 292 U.S. 393, 396, 54 S.Ct. 743, 744, 78 L.Ed. 1323, 1326 (1934); Horsman Dolls, Inc. v. Unemployment Compensation Comm'n, 7 N.J. 541, 550-51, 82 A.2d 177, appeal dismissed, 342 U.S. 890, 72 S.Ct. 201, 96 L.Ed. 667 (1951); Malady v. Board of Review, 166 N.J. Super. 523, 530, 400 A.2d 119 (App.Div. 1979).
We also rejected the defendants' demand for a factfinding hearing in Superior Court, stating:
Appellants' demand for a factfinding hearing in Superior Court "as provided in the statutes and rules of court" is again a meritless contention. The Superior Court is vested with jurisdiction over penalty enforcement actions brought by respondent. It is not vested with jurisdiction to conduct factfinding hearings as to the validity of the penalties per se. N.J.S.A. 55:13A-19(b) provides that penalties assessed by respondent may be recovered "in a civil action by a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58-1) in the Superior Court." The applicable statute and Rules of Court (R. 4:70-4(b)) do not accord appellants a right to a full factfinding hearing in Superior Court on the validity of the penalties. Appellants' right to a review of the penalties assessed is provided by a timely request for an administrative hearing with appellate review in this court. R. 2:2-3; Pascucci v. Vagott, 71 N.J. 40 [362 A.2d 566] (1976). [Community Affairs Dep't v. Wertheimer, supra, 177 N.J. Super. at 600, 427 A.2d 592 (emphasis added)].
The language of this decision suggests that the Superior Court would not have jurisdiction to hold hearings to determine whether penalties are warranted. This case is distinguishable, however, because the statute involved therein, N.J.S.A. 55:13A-19, specifically provides for the initial imposition of penalties through administrative avenues. N.J.S.A. 55:13A-19(b) provides:
Any person who violates, or causes to be violated, any provision of subsection (a) of this section shall be liable to a penalty of not less than $50.00 nor more than $500.00 for each violation, and a penalty of not less than $500.00 nor more than $5,000.00 for each continuing violation. Where any violation of subsection (a) of this section is of a continuing nature, each day during which such continuing violation remains unabated after the date fixed by the commissioner in any order *29 or notice for the correction or termination of such continuing violation, shall constitute an additional, separate and distinct violation, except during the time on appeal from said order may be taken or is pending. The commissioner, in the exercise of his administrative authority pursuant to this act, may levy and collect penalties in the amounts set forth in this section. Where the administrative penalty order has not been satisfied within 30 days of its issuance the penalty may be sued for, and recovered by and in the name of the commissioner in a civil action by a summary proceeding under the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.) in the Superior Court. [emphasis added].
Thus, the Commission was statutorily authorized to seek a plenary hearing in the administrative agency before pursuing relief in Superior Court. The Pesticide Act, on the other hand, contains no such provision requiring an administrative hearing in the administrative agency or the Office of Administrative Law. Consequently, the jurisdiction of the Superior Court for purposes of the Pesticide Act is not the same as for purposes of the Hotel and Motel Dwelling Law.
Moreover, as a practical matter, it does not appear that much would be gained by holding an administrative hearing in the Office of Administrative Law. The Pesticide Act is a "strict liability" statute, the violation of which can result in penal sanctions regardless of moral culpability or the need for a finding of a mens rea. See New Jersey Dep't of Envtl. Protection v. Lewis, 215 N.J. Super. 564, 572-73, 522 A.2d 485 (App.Div. 1987); see also New Jersey Dep't of Envtl. Protection v. Harris, 214 N.J. Super. 140, 147-48, 518 A.2d 743 (App.Div. 1986). The Pesticide Act provides that any person in violation of its provisions "shall be liable to a penalty of not more than $3,000.00 for each offense." N.J.S.A. 13:1F-10 (emphasis added). Therefore, only the doing of the act by the charged person need be shown. See New Jersey Dep't of Envtl. Protection v. Lewis, supra, 215 N.J. Super. at 573, 522 A.2d 485; Department of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407, 411, 271 A.2d 595 (App.Div. 1970); Department of Labor & Industry v. Rosen, 44 N.J. Super. 42, 50, 129 A.2d 588 (App.Div. 1957); State v. Kinsley, 103 N.J. Super. 190, 193-94, 246 A.2d 764 (Cty.Ct. 1968), aff'd o.b., 105 N.J. Super. 347, 252 A.2d 224 (App.Div. 1969). The Superior Court need only hold a limited hearing pursuant to R. 4:70-4(b) to determine whether the defendants *30 committed the acts with which they were charged. With testimony of DEPE inspectors Russell and Kosinski, who witnessed the unlawful use of the pesticide, and testimony of DEPE inspector Santiago that records were withheld from her, the DEPE could readily establish that the proscribed acts were in fact committed by defendants. In such cases, the expertise of the agency is not imperative, or even relevant, in assessing penalties for committing the proscribed acts. As Judge Haines stated in Bordentown Township Bd. of Health v. Interstate Waste, supra, 191 N.J. Super. at 137, 465 A.2d 587, "[u]nnecessary litigation should be avoided."
In sum, sending this case to the Office of Administrative Law first for a full administrative hearing is unnecessary and, more importantly, contrary to the clear and explicit language and intent of the Pesticide Act. Consequently, we hold that the Superior Court had jurisdiction over the matter and, therefore, erred in dismissing the complaint on the ground that the action was premature because an administrative hearing had not been held in the Office of Administrative Law.
Since we are satisfied that the Superior Court had jurisdiction of this matter, the trial court should have determined whether the action was time-barred by the two-year statute of limitations. Preliminarily, we emphasize that the issue as to which statute of limitations, if any, applies to penalty enforcement actions is a matter of law, and, as such, we would only delay the inevitable by remanding this issue to the trial court. And, since the parties have briefed and argued the issue before this court, it can be readily disposed of by us now.
Defendant argues that the claims against them are barred by the two-year statute of limitations set forth in N.J.S.A. 2A:14-10. This statute, in pertinent part, provides:
All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced within the periods of time herein prescribed:

*31 a. Within 2 years next after the offense committed or to be committed against the statute, when the forfeiture is or shall be limited by the statute to the state of New Jersey only. [N.J.S.A. 2A:14-10].
The DEPE objects to the application of this two-year period of limitation on the grounds that this is not an action at law for forfeiture. The issue, then, is whether actions for penalties and fines constitute "actions at law brought for any forfeiture upon any penal statute," such that they are subject to the two year statute of limitations of N.J.S.A. 2A:14-10.
In order for N.J.S.A. 2A:14-10 to apply, it must first be shown that the claims are brought pursuant to a penal statute. A penal statute has been defined as "one which imposes punishment for an offense against the state as compared to a wrong against an individual." Abbott v. Doctors Ridgik, Steinberg & Assocs., P.A., 609 F. Supp. 1216, 1218 (D.N.J. 1985); Cruickshanks v. Eak, 33 N.J. Super. 285, 292-93, 110 A.2d 61 (Law Div. 1954); Ryan v. Motor Credit Co., Inc., 130 N.J. Eq. 531, 539, 23 A.2d 607 (Ch. 1941), aff'd, 132 N.J. Eq. 398, 28 A.2d 181 (1942). Therefore, sanctions for essentially public wrongs are penal in nature. See, e.g., Addiss v. Logan Corp., 23 N.J. 142, 148-49, 128 A.2d 462 (1957) (State Rent Control Act is remedial because tenant recovers measure of rent unlawfully extracted and penal because landlord must repay three times the amount taken as an additional penalty for "impugn[ing] the statutory purpose of stabilizing rentals in emergency areas"). The Pesticide Act is penal in nature because it is designed to penalize those who threaten the environment through the misuse of pesticides. Harm to the environment is a public wrong.
Nonetheless, the pivotal question is whether the fines and penalties imposed upon defendants under N.J.S.A. 13:1F-10 of the Pesticide Act constitute a "forfeiture" within the meaning of N.J.S.A. 2A:14-10. Forfeiture proceedings are civil in rem actions, not against the owner or possessor of the property, but against the property itself. State v. 1979 Pontiac Trans Am, Color Grey, 98 N.J. 474, 480, 487 A.2d 722 (1985); State v. One *32 1988 Honda Prelude, 252 N.J. Super. 312, 317, 599 A.2d 932 (App.Div. 1991); State v. One 1986 Subaru, 230 N.J. Super. 451, 455, 553 A.2d 869 (App.Div. 1989), aff'd in part and rev'd in part, 120 N.J. 310, 576 A.2d 859 (1990); State v. Moriarty, 97 N.J. Super. 458, 473, 235 A.2d 247 (Law Div. 1967), aff'd sub nom in Farley v. $168,400.97, 55 N.J. 31, 259 A.2d 201 (1969). In State v. One 1986 Subaru, supra, we explained:
This theory of forfeiture is based on the misuse of the property rather than resulting from the commission of an offense by its owner or user. It has been said that our statutory forfeiture "is limited to the offending property itself, `which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimated and insentient.' [citations omitted]." Farley v. $168,400.97, supra, 55 N.J. at 37-38 [259 A.2d 201]. A legislative or statutory forfeiture ascribes to the property a power of complicity and guilt in the wrong. By contrast, in a criminal prosecution "it is the wrongdoer in person who is proceeded against, convicted and punished." Various Items of Personal Property v. United States, 282 U.S. 577, 580-81, 51 S.Ct. 282, 283-84, 75 L.Ed. 558, 561 (1931).
This in rem forfeiture action is somewhat analogous to the law of deodand; "by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited.... [Like in Mosaical law] `[i]f an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten.'" J.W. Goldsmith, JR.-Grant Company v. United States, 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376, 379 (1921). See also State v. 1979 Trans Am., supra, 98 N.J. at 479-80 [487 A.2d 722]. [230 N.J. Super. at 455-56, 553 A.2d 869].
Forfeiture has been employed in the past where there is some statutory provision naming forfeiture as an available remedy. For example, forfeiture is often used to seize property that has been "utilized in furtherance of an unlawful activity" or to seize the "proceeds of illegal activities," pursuant to N.J.S.A. 2C:64-1. See, e.g., State v. One 1986 Subaru, 120 N.J. 310, 319-20, 576 A.2d 859 (1990); State v. One (1) 1979 Chevrolet Camaro Z-28, 202 N.J. Super. 222, 231-32, 494 A.2d 816 (App.Div. 1985).
Forfeiture is authorized in numerous other areas of the law as well. In the context of environmental regulations, forfeiture is a statutorily authorized remedy for violations of New Jersey's Spill Compensation and Control Act, N.J.S.A. 58:10-23.11. Specifically, N.J.S.A. 58:10-23.11u.e provides that "All conveyances used or intended for use in the willful discharge of any hazardous substance *33 are subject to forfeiture to the State pursuant to the provisions of P.L. 1981, c. 387 (C. 13:1K-1 et seq.)." The Spill Compensation and Control Act also provides for summary proceedings in the Superior Court to collect penalties. See N.J.S.A. 58:10-23.11u(d). Thus, the Legislature intended both penalties and the forfeiture of property to be available means of redress for the State in the event of violations under this Act. See also N.J.S.A. 13:1E-9f and j (Solid Waste Management Act providing for both penalties and forfeiture).
By contrast, however, the Pesticide Act does not contain any authorization for the use of forfeiture as a remedy. First, nothing in the statute indicates that the Legislature intended forfeiture to be a form of redress for violations of the Pesticide Act or that it intended the forfeiture statute of limitations to apply to claims under the act. Moreover, the concept of forfeiture simply does not make sense in the context of Pesticide Act violations. Forfeiture is used to seize property on the theory that that property somehow helped to further a wrongful act. "Modern forfeiture statutes were enacted as a means of preventing the commission of particular offenses or as a means of providing incentives to owners of property to be more responsible in using the property." State v. One 1988 Honda Prelude, supra, 252 N.J. Super. at 316-17, 599 A.2d 932; see State v. 1979 Pontiac Trans Am, Color Grey, supra, 98 N.J. at 480-81, 487 A.2d 722. Therefore, forfeiture is valid only where there exists "a direct causal relationship between the use of the property and the unlawful activity." State v. One 1986 Subaru, supra, 230 N.J. Super. at 457, 553 A.2d 869; see Ben Ali v. Towe, 30 N.J. Super. 19, 24, 103 A.2d 158 (App.Div. 1954). Here, defendants were not charged with the misuse of their property, but with the misuse of pesticides. In this regard, the penalties imposed were designed to encourage defendants to be responsible in using pesticides and it cannot be said that the penalties constitute a forfeiture of property that directly contributed to or originated from the illegal conduct. The DEPE's endeavor to collect penalties from defendants under *34 the Pesticide Act was designed to punish the wrongful behavior and hopefully deter similar conduct in the future, not to confiscate the property used or the proceeds earned therefrom.
Prior to a recent New Jersey Supreme Court decision, actions brought by the government were not subject to any statute of limitations. The doctrine of nullum tempus occurrit regi, which means literally "no time runs against the king", provided that a statute of limitations must not be permitted to run against a valid State claim on the theory that the public should not have to suffer by reason of the inefficiencies of public servants. See New Jersey Educ. Facilities v. Gruzen, 125 N.J. 66, 68, 75, 592 A.2d 559 (1991). However, in 1991, the Supreme Court abrogated the doctrine "insofar as it would preclude the application of general statutes of limitations to the State ... or its agencies." Id. at 76, 592 A.2d 559. Subsequently, the Legislature passed a general statute of limitations applicable to the State and its agencies providing that all civil actions be initiated within ten years after the accrual of the cause of action. N.J.S.A. 2A:14-1.2 provides, in part:
a. Except where a limitations provision expressly and specifically applies to actions commenced by the State or where a longer limitations period would otherwise apply, and subject to any statutory provisions or common law rules extending limitations periods, any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued.
* * * * * * * *
c. As used in this act, the term "State" means the State, its political subdivisions, any office, department, division, bureau, board, commission or agency of the State or one of its political subdivisions, and any public authority or public agency, including, but not limited to, the New Jersey Transit Corporation and the University of Medicine and Dentistry of New Jersey. [emphasis added].
Indeed, it is not "expressly and specifically" clear that the two-year statute of limitations set forth in N.J.S.A. 2A:14-10 applies to actions brought under the Pesticide Act, and therefore, this action by the DEPE was controlled by the ten-year statute of limitations set forth in N.J.S.A. 2A:14-1.2. Consequently, the claims brought by the DEPE are not time barred and the matter should be *35 remanded to the Superior Court for a limited hearing for the assessment of penalties pursuant to the Pesticide Act and R. 4:70.
Accordingly, the order dismissing this action without prejudice is reversed and the matter remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.
NOTES
[1] N.J.A.C. 7:30-10.3(a) requires that "no person shall use or apply a pesticide in a manner inconsistent with its Federal or State registered label or labeling or restrictions as provided for in this chapter." The Parathion label requires protective clothing to be worn when using the chemical and defines "protective clothing" as follows:

(1) Wear water-proof pants, coat, hat, rubber boots or, rubber overshoes (2) Wear safety goggles (3) Wear a pesticide respirator jointly approved by the Mining Enforcement and Safety Administration (formerly the U.S. Bureau of Mines) and by the National Institute for Occupational Safety and Health under the provisions of 30 CFR Part 11 (4) Wear heavy duty, natural rubber gloves.
[2] The DEPE moved for summary proceedings under R. 4:67-6 as well. R. 4:67-6 governs summary proceedings to enforce agency orders. This court rule is inapplicable in this case because there has been no order already entered by the DEPE. The comments to R. 4:67-6 specifically state:

[T]he distinction must be drawn between initial actions by agencies instituted in a court of competent jurisdiction to enforce a statute or regulation and an action brought by an agency to enforce an order already entered by it. This rule applies only to the latter. As to the former, see R. 4:70. [Pressler, Current N.J. Court Rules, comment on R. 4:67-6 (1993)].